Argued December 20, 1976, affirmed February 14, 1977

EARLE et al, *Appellants,*
MARTIN et ver, *Plaintiffs,*
*v.*
McCARTHY et al, *Respondents.*
(No. 91937, CA 6340)
560 P2d 665

M. Chapin Milbank, Salem, argued the cause for appellants. With him on the brief was Schlegel, Milbank, Wheeler & Jarman, Salem.

Asa L. Lewelling, Salem, argued the cause for respondent S. S. Steiner, Inc. With him on the brief was Frank C. McKinney, Marion County Legal Counsel, Salem, attorney for respondent Marion County.

Before Schwab, Chief Judge, and Lee and Tanzer, Judges.

TANZER, J.

**TANZER, J.**

The Marion County Board of Commissioners granted defendant a conditional use permit for the construction of a hop warehouse.[1] Plaintiffs, the owners of land near the proposed site of the warehouse, thereafter petitioned the circuit court for a writ of review contending that the Board's action was predicated upon an improper construction of the applicable law and that it was not supported by substantial evidence. The circuit court upheld the Board's action by denying the writ of review. Plaintiffs appeal.

S. S. Steiner, Inc., (hereinafter "permittee") presently operates the Larmer Warehouse in the city of Salem. It seeks to construct and operate a substitute facility on a four-acre tract of land north of Salem and south of Hopmere, in Marion County. The proposed facility would store a large volume of crops from many hop growers. The facility would also store and sell string and burlap for hop production.

The proposed site of the warehouse is in an area designated by the Marion County Zoning Ordinance as an Exclusive Farm Use (EFU) zone.

■ Plaintiffs contend that a commercial warehouse for the storage of the product of land other than that on which the proposed warehouse would be located is not a permissible conditional use in an EFU zone. An analysis of the ordinance, however, demonstrates otherwise.

Under Marion County ordinances, EFU is the most

---

[1] The Marion County Planning Commission, after a public hearing, denied permittee's application for a conditional use permit on the grounds that the proposed facility would have an adverse effect on a nearby school and established residences and because there was a more appropriate alternative location for the facility. This action was contrary to the recommendation of the Planning Commission staff. The permittee then sought review of the Planning Commission action by the Board of Commissioners. The Board conducted new hearings on the matter before voting to reverse the Planning Commission and allow the conditional use.

restricted zoning classification. Ordinance Section 136.210 states the purpose of EFU zoning:

> "The purpose and intent of the Exclusive Farm Use zone is to provide areas for the continued practice of agriculture and permit the establishment of only those new uses which are compatible to agricultural activities.
>
> "* * * * *."

Ordinance Section 136.220 provides that any "farm use" is permitted without restriction in an EFU zone.

Ordinance Section 110.223, corresponding to ORS 215.203(2)(a), defines "farm use" to include "the preparation and storage of the products raised on such land for man's use and disposal by marketing or otherwise."

Ordinance Section 136.230, pursuant to ORS 215.213, lists the permissible conditional uses in an EFU zone:

> "The following non-farm uses may be established, subject to the approval as provided in Chapter 119 of the Uniform Zone Code.
>
> "* * * * *
>
> "(b) Commercial activities that are in conjunction with farm use;
>
> "* * * * *."

It is subsection (b) that plaintiffs erroneously contend is limited to on-site produce. To the contrary, since "Commercial activities that are in conjunction with farm use" is designated by the ordinance and the statute as "nonfarm use," then it must allow something more than what would be allowed as a "farm use." It is reasonable, therefore, to construe the term as including a warehouse for the commercial storage of agricultural products of lands other than that on which the warehouse is located. Accordingly, we hold that such a use is a permitted conditional use in an EFU zone.

Plaintiffs next contend that there is no substantial evidence that the permittee's proposed use conforms to the county's comprehensive plan. Particularly in land-

use cases, the line between findings of fact for which substantial evidence is required and conclusions of law for which reason is required, is often difficult to draw clearly. *See Green v. Hayward,* 275 Or 693, 552 P2d 815 (1976). Here, the recital that the conditional use conforms to the comprehensive plan is labeled a finding of fact, but is in reality a conclusion of law drawn from other findings of fact which are in turn supported by substantial evidence. *Fifth Avenue Corp. v. Washington Co.,* 28 Or App 485, 560 P2d 656 (1977).

■ The conclusion regarding conformity is rational. The plan designates the area in question as "general agricultural." As a matter of general policy, the predominant land-use pattern in such an area is active farming. From this fact, plaintiffs conclude that the purpose of the comprehensive plan is violated by permitting commercial activity. To the contrary, the comprehensive plan permits as a general category of use, "farm products processing operated as a business separate from the farm unit." *Comprehensive Plan for Marion County, Oregon* at 81 (1972). Such a specific authorizing provision must be held to control over general statements of policy. Thus the permitted conditional use is not contrary to the plan.[2]

■ Finally, plaintiffs contend that there is no substantial evidence to support the Board's findings of fact Nos. 5, 6 and 9. These findings relate to the undesirable traffic conditions at the present location of permittee's warehouse, the prior zoning of the proposed warehouse site which permitted the development of commercial activities similar to that proposed by the permittee, and the likelihood that railroad tracks around the present warehouse would be re-

---

[2]The comprehensive plan provides that products-processing businesses may be permitted "subject to Planning Commission approval based on land use policy guidelines." Although, in this case, the Planning Commission did not approve permittee's proposed use, we do not read this provision as superseding the normal process of appealing Planning Commission decisions to the Board of Commissioners.

moved if the permittee relocated, thus relieving traffic congestion in the area.

We find that there was substantial evidence in the record to support each of these findings, *Dickinson v. Bd. of Comm.,* 21 Or App 98, 533 P2d 1395 (1975), although it would serve no useful purpose to detail it on these pages.

Affirmed.