WILLIAM DOUGLAS CHRISMON AND WIFE, EVELYN B. CHRISMON v. GUILFORD COUNTY; FORREST E. CAMPBELL, PAUL W. CLAPP, OGDEN DEAL, DOROTHY KEARNS, FRED L. PREYER, MEMBERS OF THE BOARD OF COMMISSIONERS OF GUILFORD COUNTY; AND BRUCE CLAPP

No. 232PA87

(Filed 28 July 1988)

1. Counties § 5; Municipal Corporations § 30.6— conditional use zoning—approved practice

The practice of conditional use zoning is an approved practice in North Carolina so long as the action of the local zoning authority in accomplishing the zoning is reasonable, neither arbitrary nor unduly discriminatory, and in the public interest.

2. Counties § 5.1; Municipal Corporations § 30.6— conditional use rezoning—availability for all uses not required

It is not necessary that property rezoned to a conditional use district be available for all of the uses allowed under the corresponding general use district.

3. Municipal Corporations § 30.9— spot zoning—questions presented

In any spot zoning case in the North Carolina courts, two questions must be addressed by the finder of facts: (1) did the zoning activity in the case constitute spot zoning as our courts have defined that term; and (2) if so, did the zoning authority make a clear showing of a reasonable basis for the zoning.

4. Municipal Corporations § 30.9— spot zoning—reasonable basis—factors considered

Among the factors relevant to a judicial determination as to the existence of a sufficient reasonable basis for spot zoning are the size of the tract in question; the compatibility of the disputed action with an existing comprehensive zoning plan; the benefits and detriments resulting from the zoning for the owner of the newly zoned property, his neighbors, and the surrounding community; and the relationship between the uses envisioned under the new zoning and the uses currently present in adjacent tracts.

5. Municipal Corporations § 30.9— conditional use rezoning—reasonable basis—legal spot zoning

The rezoning of two tracts consisting of 8.24 acres from A-1 Agricultural to Conditional Use Industrial, which permitted the owner to store and sell agricultural chemicals on the tracts, constituted legal spot zoning where there was a clear showing of a reasonable basis for the spot zoning in that substantial benefits were created for the surrounding community by the rezoning and there was a close relationship between the proposed uses of the rezoned property and the uses already present in the surrounding A-1 Agricultural areas.

Chrismon v. Guilford County

6. **Municipal Corporations § 30.9— differences between conditional use and illegal contract zoning**

The principal differences between valid conditional use zoning and illegal contract zoning are: (1) valid conditional use zoning features merely a unilateral promise from the landowner to the local zoning authority as to the landowner's use of the land in question, while illegal contract zoning anticipates a bilateral contract in which the landowner and the zoning authority make reciprocal promises, and (2) in conditional use zoning, the local zoning authority maintains its independent decision-making authority, while in contract zoning, it abandons that authority by binding itself contractually with the landowner seeking a zoning amendment.

7. **Counties § 5.1; Municipal Corporations § 30.9— rezoning to conditional use district—no illegal contract zoning**

The rezoning by a board of county commissioners of two tracts consisting of 8.24 acres from A-1 Agricultural to Conditional Use Industrial did not constitute illegal contract zoning, but was valid conditional use zoning, where the record reveals only a unilateral promise by the owner in his conditional use permit application concerning his proposed use of the tracts, and where the record also shows that the board did not abandon its role as an independent decision-maker but made its final decision only after a thorough consideration of the merits of the owner's applications for rezoning and for a conditional use permit as well as the various alternatives to granting those applications.

Justice MITCHELL dissenting.

Justice WEBB joins in this dissenting opinion.

Justice WEBB dissenting.

Justice MITCHELL joins in this dissenting opinion.

ON defendants' petition for discretionary review pursuant to N.C.G.S. § 7A-31 (1986) of a decision of the Court of Appeals, 85 N.C. App. 211, 354 S.E. 2d 309 (1987), reversing the order entered by *Seay, J.*, at the 24 February 1986 Civil Session of Superior Court, GUILFORD County (entered out of term and out of county by consent of the parties on 14 April 1986), denying plaintiffs' action for declaratory judgment. Heard in the Supreme Court 10 December 1987.

*Gunn & Messick, by Paul S. Messick, Jr., for plaintiff-appel-lees.*

*Samuel Moore for defendant-appellants Guilford County and Members of the Board of Commissioners of Guilford County; and Ralph A. Walker and Osteen, Adams & Tilley, by William L. Os-teen, for defendant-appellant Bruce Clapp.*

*Thomas A. McCormick, Jr., City Attorney, City of Raleigh, by Ira J. Botvinick, Deputy City Attorney; and Jesse L. Warren, City Attorney, City of Greensboro, and Henry W. Underhill, Jr., City Attorney, City of Charlotte, amici curiae.*

MEYER, Justice.

This was an action by plaintiffs for a declaratory judgment with regard to an amendment to the Guilford County, North Carolina, zoning ordinance. Specifically, plaintiffs sought a judgment declaring that the amendment to the ordinance adopted 20 December 1982 rezoning defendant Bruce Clapp's 8.57 acres of land was unlawful and therefore void. The principal issue presented on this appeal is whether the trial court committed reversible error in affirming the validity of the rezoning in question. The Court of Appeals reversed, holding, first, that the rezoning in question constituted illegal "spot zoning" and, second, that it also constituted illegal "contract zoning." We hold that the Court of Appeals erred in both of these conclusions, and accordingly, we reverse.

The facts underlying the case are undisputed. Defendant Bruce Clapp (who is not related to defendant Paul Clapp, a member of the Guilford County Board of Commissioners) had been operating a business on a 3.18-acre tract of property adjacent to his residence in Rock Creek Township, Guilford County, since 1948. Mr. Clapp's business consisted, first, of buying, drying, storing, and selling grain and, second, of selling and distributing lime, fertilizer, pesticides, and other agricultural chemicals. The distinction between these two principal elements of Mr. Clapp's business is important to the disposition of this case.

In 1964, Guilford County adopted a comprehensive zoning ordinance. The ordinance zoned Mr. Clapp's 3.18-acre tract, as well as an extensive area surrounding his tract, as "A-1 Agricultural" (hereinafter "A-1"). Under this particular zoning classification, one

element of the business—namely, the grain drying and storing operation—constituted a permitted use. Significantly, however, the sale and distribution of the lime, fertilizer, pesticides, and other agricultural chemicals were not uses permitted by the A-1 classification. However, because this latter activity pre-existed the ordinance, Mr. Clapp was allowed to continue to sell agricultural chemicals on the 3.18-acre tract adjacent to his own home. Under the ordinance, though such sales constituted a nonconforming use, the sales could be carried on, so long as they were not expanded.

In 1969, plaintiffs William and Evelyn Chrismon bought a tract of land from Mr. Clapp and built a home there. Plaintiffs' lot is located at the south side of the intersection of North Carolina Highway 61 and Gun Shop Road. Highway 61 runs north and south, while Gun Shop Road, a small, unpaved road, begins at Highway 61 and runs east. Mr. Clapp's residence is located on the north side of the intersection, directly across Gun Shop Road from plaintiffs' residence. Adjacent to plaintiffs' lot is an additional 5.06-acre tract, also owned by Mr. Clapp. Prior to 1980, that tract had been used by its owner for the growing of tobacco.

Beginning in 1980, however, Mr. Clapp moved some portion of his business operation from the 3.18-acre tract north of Gun Shop Road to the 5.06-acre tract south of Gun Shop Road, directly adjacent to plaintiffs' lot. Subsequently, Mr. Clapp constructed some new buildings on this larger tract, erected several grain bins, and generally enlarged his operation. Concerned by the increased noise, dust, and traffic caused by Mr. Clapp's expansion, plaintiffs filed a complaint with the Guilford County Inspections Department. The Inspections Department subsequently notified Mr. Clapp, by letter dated 22 July 1982, that the expansion of the *agricultural chemical operation* to the larger tract adjacent to plaintiffs' lot constituted an impermissible expansion of a nonconforming use. The same letter informed Mr. Clapp further that, though his activity was impermissible under the ordinance, should he so desire, he could request a rezoning of the property.

Shortly thereafter, Mr. Clapp applied to have both of the tracts in question, the 3.18-acre tract north of Gun Shop Road and the 5.06-acre tract south of Gun Shop Road, rezoned from A-1 to

"Conditional Use Industrial District" (hereinafter CU-M-2).[1] He also applied for a conditional use permit, specifying in the application that he would use the property as it was then being used and listing those improvements he would like to make in the next five years. Under the CU-M-2 classification, Clapp's agricultural chemical operation would become a permitted use upon the issuance of the conditional use permit. The Guilford County Planning Board met on 8 September 1982 and voted to approve the recommendation of the Planning Division that the property be rezoned consistent with Mr. Clapp's request.

On 20 December 1982, pursuant to appropriate notice, the Guilford County Board of Commissioners held a public hearing concerning Mr. Clapp's rezoning application. Members of the Board heard statements from Mr. Clapp, from plaintiffs, and, also, from plaintiffs' attorney. Several additional persons had previously spoken in favor of Mr. Clapp's rezoning request at earlier Board meetings, stating that Mr. Clapp's business provided a service to the farmers in the immediate vicinity. The Board had also been presented with a petition signed by eighty-eight persons favoring the rezoning. Having considered the matter, the Board members voted to rezone the tracts in question from A-1 to CU-M-2, and as a part of the same resolution, they also voted to approve the conditional use permit application.

Pursuant to this decision by the County to rezone the property in question, plaintiffs brought this action seeking to have both the zoning amendment and the conditional use permit declared invalid. After a trial without a jury, the trial court found, among other things, that the sale and distribution of the agricultural chemicals were uses compatible with the agricultural needs of the surrounding area. The trial court concluded further that the rezoning was neither "spot zoning" nor "contract zoning" and also that the County had not acted arbitrarily in making its decision. The trial court made neither findings of fact nor conclusions of law with regard to the issuance of the conditional use permit.

---

1. The 3.18-acre tract and the 5.06-acre tract, taken together, do not correspond precisely to the 8.57-acre total indicated in Mr. Clapp's rezoning request. The record reveals that the additional .33 acre in question corresponds to land adjacent to one of the tracts for which Mr. Clapp had an option to buy. We make this explanation for the sake of clarity only; it is not relevant to the disposition of the case.

As indicated above, the Court of Appeals reversed the decision of the trial court. It held, first, that the rezoning at issue in this case—namely, the rezoning of Mr. Clapp's 8.57 acres from A-1 to CU-M-2—constituted an illegal form of "spot zoning" and was therefore void. It so held for three principal reasons: (1) the rezoning was not called for by any change of conditions on the land; (2) the rezoning was not called for by the character of the district and the particular characteristics of the area being rezoned; and (3) the rezoning was not called for by the classification and use of nearby land. The Court of Appeals further held that the mere fact that the uses actually authorized were not, in and of themselves, incompatible with the general area was not sufficient to support the trial court's finding of no illegal spot zoning on these facts.

The Court of Appeals held, second, that the rezoning in question also constituted illegal "contract zoning" and was therefore also void for that alternative reason. Here, stated the Court of Appeals, the rezoning was accomplished upon the assurance that Mr. Clapp would submit an application for a conditional use permit specifying that he would use the property only in a certain manner. The Court of Appeals concluded that, in essence, the rezoning here was accomplished through a bargain between the applicant and the Board rather than through a proper and valid exercise of Guilford County's legislative discretion. According to the Court of Appeals, this activity constituted illegal "contract zoning" and was therefore void.

Pursuant to N.C.G.S. § 7A-31, and because this Court was convinced that this cause involves legal principles of major significance to the jurisprudence of this State, we allowed defendants' petition for discretionary review of the Court of Appeals' decision. The questions plainly before us are these: first, did the rezoning of defendant Clapp's tract from A-1 to CU-M-2 by the Guilford County Board of Commissioners constitute illegal spot zoning; and second, did the same rezoning constitute illegal contract zoning. The Court of Appeals answered each question in the affirmative. We conclude that the correct answer to both questions is "no."

I.

[1] As we stated above, in its decision in this case, the Court of Appeals voided the rezoning of the land in question on the dual

grounds that the rezoning constituted both illegal spot zoning and illegal contract zoning. Later in this opinion, we will address, and reject, the analysis employed by the Court of Appeals in reaching its alternative specific conclusions as to the illegality of the rezoning here. As an initial matter, however, because this Court has not previously been called upon to address the legal concept of conditional use zoning, and because the decision of the Court of Appeals virtually outlaws that practice, we pause now to address its place in the jurisprudence of this state. Specifically, we hold today that the practice of conditional use zoning is an approved practice in North Carolina, so long as the action of the local zoning authority in accomplishing the zoning is reasonable, neither arbitrary nor unduly discriminatory, and in the public interest.

We note first that, as a general matter, the power to zone real property is vested in the General Assembly by article II, section 1, of the North Carolina Constitution. *Keiger v. Winston-Salem Board of Adjustment*, 278 N.C. 17, 178 S.E. 2d 616 (1971). This zoning power may be and has been conferred by the General Assembly upon various local governments by legislative enactment. *See Jackson v. Guilford County Bd. of Adjustment*, 275 N.C. 155, 166 S.E. 2d 78 (1969). This Court has held that zoning power, irrespective of who wields it, is subject to both a standard of reasonableness and a constitutional limitation on arbitrary and unduly discriminatory interference with the rights of North Carolina property owners. *In re Ellis*, 277 N.C. 419, 178 S.E. 2d 77 (1970).

Zoning, as a definitional matter, is the regulation by a local governmental entity of the use of land within a given community, and of the buildings and structures which may be located thereon, in accordance with a general plan. 1 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 1.01 (4th ed. 1987). Most zoning ordinances—including that under which Guilford County acted in this case—undertake to provide some area, usually in the form of districts, for all lawful uses within a given area while seeking simultaneously to separate uses which are incompatible. 2 R. Anderson, *American Law of Zoning* § 9.16 (3d ed. 1986). Comprehensive zoning systems, though effective in preserving the character of ongoing uses, are often criticized for not allowing for the degree of flexibility needed to allow local officials to respond appropriately to "constantly shifting conditions and public needs."

Brough, *Flexibility Without Arbitrariness In The Zoning System: Observations On North Carolina Special Exception And Zoning Amendment Cases*, 53 N.C.L. Rev. 925, 925 (1975).

The practice of conditional use zoning — like that used by Guilford County in this case — is one of several vehicles by which greater zoning flexibility can be and has been acquired by zoning authorities. Conditional use zoning anticipates that when the rezoning of certain property within the general zoning framework described above would constitute an unacceptably drastic change, such a rezoning could still be accomplished through the addition of certain conditions or use limitations. Specifically, conditional use zoning occurs when a governmental body, without committing its own authority, secures a given property owner's agreement to limit the use of his property to a particular use or to subject his tract to certain restrictions as a precondition to any rezoning. D. Hagman & J. Juergensmeyer, *Urban Planning and Land Development Control Law* § 5.5 (2d ed. 1986); Shapiro, *The Case For Conditional Zoning*, 41 Temp. L.Q. 267 (1968).

It is indeed generally agreed among commentators that, because it permits a given local authority greater flexibility in balancing conflicting demands, the practice of conditional use zoning is exceedingly valuable. 1 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 27.05 (4th ed. 1987); 2 R. Anderson, *American Law of Zoning* §§ 9.17, 9.20 (3d ed. 1986). One of the early leading scholars in the area of conditional use zoning, Ronald M. Shapiro, addressed the importance of this increased flexibility in a 1968 law review article as follows:

> Conditional zoning is an outgrowth of the need for compromise between the interests of the developer seeking appropriate zoning changes for his tract, and the neighboring landowner whose property interests would suffer if the most intensive use permitted by the new classification were instituted. In an attempt to reconcile these conflicting pressures, the municipality will authorize the proposed change but minimize its adverse effects by imposing conditions.

Shapiro, *The Case For Conditional Zoning*, 41 Temp. L.Q. 267, 280 (1968).

Steven E. Davenport and Philip P. Green, Jr., of our own Institute of Government, in the context of the approach employed by zoning authorities in Greensboro, North Carolina, echoed Shapiro's observations concerning the benefits of conditional use zoning:

> The City of Greensboro's conditional-use approach to rezoning arose from the theory that of the hundreds of pieces of property in the city, many—because of particular physical or locational attributes—did not fit well into any of the classes of general zoning districts available at that time. For example, perhaps a lot zoned "residential" adjoining a "commercial area" should not reasonably be "residential," but rezoning it commercial (with all legal uses permitted) would only aggravate the land-use problem. But if the rezoning was accompanied by certain conditions or use limitations, or both, a rezoning could perhaps not only offer a reasonable use for the property but also solve a land-use relationship problem.

Davenport & Green, *Special Use and Conditional Use Districts: A Way to Impose More Specific Zoning Controls* at 13 (Institute of Government, The University of North Carolina at Chapel Hill, 1980).

Without pausing at this juncture specifically to address the propriety of the zoning action in this case, we note that the action here is consistent with the observations of Shapiro and of Davenport and Green. Before the now-disputed zoning occurred, the tracts of land in question, and all of the surrounding land for some miles, were classified under the comprehensive zoning plan as A-1. While the A-1 classification allowed Mr. Clapp to engage in the storage and sale of grain, it did not allow him to store and sell agricultural chemicals, which was his desire. While the rezoning of the two tracts to M-2 Industrial would clearly allow the desired agricultural chemical operation, it would also clearly allow for activities substantially inconsistent with the surrounding A-1 areas.[2] Herein lies the usefulness of conditional use zoning. By rezoning these tracts CU-M-2, the desired activity becomes a con-

---

2. For example, permitted uses in a district zoned under the M-2 Industrial classification would include, among other things, manufacturing facilities of virtually any kind, fuel oil dealerships, waste recycling facilities, and public utility storage depots.

forming use, but by virtue of the attendant conditions, uses undesirable under these circumstances can be limited or avoided altogether.

Notwithstanding the manifest benefits of conditional use zoning, there has, over the course of time, been some divergence of opinion amongst courts and commentators alike as to the legal status of the practice. In fact, the initial judicial response to conditional use zoning was to condemn the practice as invalid per se. *See, e.g., Hartnett v. Austin*, 93 So. 2d 86 (Fla. 1956); *V. F. Zahodiakin Eng'r Corp. v. Zoning Board of Adjustment*, 8 N.J. 386, 86 A. 2d 127 (1952). Those courts falling into this category have objected to conditional use zoning on the several grounds that it constitutes illegal spot zoning; that it is not, on the specific facts, authorized by the state's zoning enabling legislation; and that it results in an improper and illegal abandonment of the local government's police powers. 2 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 27.05 (4th ed. 1987).

The benefits of the additional zoning and planning flexibility inherent in conditional use zoning have apparently not escaped the attention of jurisdictions which have addressed the issue more recently. Many jurisdictions now approve of the practice of conditional use zoning, so long as the action of the local zoning authority in accomplishing the zoning is reasonable, neither arbitrary nor unduly discriminatory, and in the public interest.[3]

---

3. *See, e.g., Haas v. City of Mobile*, 289 Ala. 16, 265 So. 2d 564 (1972); *Transamerica Title Insurance Co. v. City of Tucson*, 23 Ariz. App. 385, 533 P. 2d 693 (1975); *J-Marion Co. v. County of Sacramento*, 76 Cal. App. 3d 517, 142 Cal. Rptr. 723 (1977); *City of Colorado Springs v. Smartt*, 620 P. 2d 1060 (Colo. 1980); *Warshaw v. City of Atlanta*, 250 Ga. 535, 299 S.E. 2d 552 (1983); *Goffinet v. County of Christian*, 65 Ill. 2d 40, 357 N.E. 2d 442 (1976); *Sylvania Electric Products, Inc. v. Newton*, 344 Mass. 428, 183 N.E. 2d 118 (1962); *Housing & Redevelopment Authority v. Jorgensen*, 328 N.W. 2d 740 (Minn. 1983); *Bucholz v. City of Omaha*, 174 Neb. 862, 120 N.W. 2d 270 (1963); *Collard v. Vil of Flower Hill*, 52 N.Y. 2d 594, 421 N.E. 2d 818, 439 N.Y.S. 2d 326 (1981); *Sweetman v. Town of Cumberland*, 117 R.I. 134, 364 A. 2d 1277 (1976); *City of Redmond v. Kezner*, 10 Wash. App. 332, 517 P. 2d 625 (1973); *Howard v. Elm Grove*, 80 Wis. 2d 33, 257 N.W. 2d 850 (1977); 1982 Me. Laws ch. 598 (statute permits a municipality to include in its comprehensive plan provisions for conditional and contract rezoning); Va. Code § 15.1-491 (1988) (statute permits a municipality to impose reasonable conditions "as part of an amendment to the zoning map . . . in addition to the regulations provided for the zoning district by the ordinance, when such conditions have been proffered in writing, in advance of the public hearing before the governing body . . . by the owner of the [subject] property").

These jurisdictions, which comprise a growing trend, have concluded, among other things, that zoning legislation provides ample authority for the practice; that the use under the practice of carefully tailored restraints advanced, rather than injured, the interests of adjacent landowners; and that the practice is an appropriate means of harmonizing private interests in land and thus of benefitting the public interest. Wegner, *Moving Toward the Bargaining Table: Contract Zoning, Development Agreements, and the Theoretical Foundations of Government Land Use Deals,* 65 N.C.L. Rev. 957, 983-84 (1987).

Today, we join this growing trend of jurisdictions in recognizing the validity of properly employed conditional use zoning. We note that, though not specifically in effect when this case initially arose, our General Statutes now explicitly enable our local jurisdictions to employ conditional use zoning. The relevant statute provides, in pertinent part, as follows:

> A *county* may divide its territorial jurisdiction into districts of any number, shape, and area that it may consider best suited to carry out the purposes of this Part. Within these districts a county may regulate and restrict the erection, construction, reconstruction, alteration, repair, or use of buildings, structures, or land. Such districts may include, but shall not be limited to, general use districts, in which a variety of uses are permissible in accordance with general standards; overlay districts, in which additional requirements are imposed on certain properties within one or more underlying general or special use districts; and *special use districts or conditional use districts,* in which uses are permitted only upon the issuance of a special use permit or a conditional use permit.

N.C.G.S. § 153A-342 (1987) (emphasis added). *See also* N.C.G.S. § 160A-382 (1987) (providing identical authority to cities and towns).

Although not mentioning conditional use zoning by name, the predecessor statute to that excerpted above — specifically, N.C.G.S. § 153A-340 (1981) — authorized local governments, among other things, to regulate and *restrict* the use of land and to issue conditional use permits. It was on the basis of this predecessor statute that Guilford County enacted the zoning ordinance pur-

suant to which the conditional use zoning at issue in this case occurred. The absence of any explicit mention of the practice of conditional use zoning in the predecessor statute is, in and of itself, not an indication of a lack of authority in local jurisdictions to engage in the practice. *See Collard v. Incorporated Village,* 52 N.Y. 2d 594, 421 N.E. 2d 818, 439 N.Y.S. 2d 326 (1981). With regard to the County's authority to so act, two leading commentators stated as follows:

> The authors believe that the general zoning enabling act contains ample authority to support this type of zoning system. It was first put into effect in the city of Greensboro and subsequently in Guilford County and Statesville with no further statutory support.

Davenport & Green, *Special Use and Conditional Use Districts: A Way to Impose More Specific Zoning Controls* at 9 (Institute of Government, The University of North Carolina at Chapel Hill, 1980).

Consistent with the above, this Court holds today that conditional use zoning, when carried out properly, is an approved practice in North Carolina. Like the jurisdictions we expressly join today, we are persuaded that the practice, when properly implemented, will add a valuable and desirable flexibility to the planning efforts of local authorities throughout our state. In our view, the "all or nothing" approach of traditional zoning techniques is insufficient in today's world of rapid industrial expansion and pressing urban and rural social and economic problems. *See Bartram v. Zoning Commission,* 136 Conn. 89, 68 A. 2d 308 (1949); Shapiro, *The Case For Conditional Zoning,* 41 Temp. L.Q. 267 (1968).

Having so stated, we hasten to add that, just as this type of zoning can provide much-needed and valuable flexibility to the planning efforts of local zoning authorities, it could also be as easily abused. We recognize that critics of the practice are to a limited extent justified in their concern that the unrestricted use of conditional use zoning could lead to private or public abuse of governmental power. We have said, however, that, in order to be legal and proper, conditional use zoning, like any type of zoning, must be reasonable, neither arbitrary nor unduly discriminatory, and in the public interest. *In re Ellis,* 277 N.C. 419, 178 S.E. 2d 77.

It goes without saying that it also cannot constitute illegal spot zoning or illegal contract zoning as those two concepts are developed in the pages which follow. The benefits of the flexibility of conditional use zoning can be fairly achieved only when these limiting standards are consistently and carefully applied.

Before moving to the discussion of spot zoning and contract zoning, we pause a final time to address, and to expressly reject, one conclusion made by the Court of Appeals with regard to the concept of conditional use zoning. Specifically, in its opinion below in this case, the Court of Appeals stated as follows:

> Rezoning, however, may be done only if the location and surrounding circumstances are such that the property should be made available for *all* uses permitted by the zoning classification to which the property is rezoned. *Allred v. City of Raleigh*, 277 N.C. 530, 178 S.E. 2d 432 (1971). The fact that the property is rezoned to a conditional use district does not change that rule. Undoubtedly, the establishment of conditional use districts is a means to achieve greater flexibility in zoning. By definition, the county's zoning ordinance deems a conditional use district to be inappropriate for all the uses permitted in its corresponding district absent the imposition of "special conditions." It is the imposition of special conditions, through the issuance of the conditional use permit, which will make the use appropriate for the affected area. *Nevertheless, in order to properly rezone the area to a conditional use district, the zoning authority initially must determine that the property, under the new zoning classification, is suitable for all the uses permitted in its corresponding district.*

*Chrismon v. Guilford County*, 85 N.C. App. 211, 218, 354 S.E. 2d 309, 314 (emphasis added).

Translating the above-excerpted conclusion of the Court of Appeals to the facts of the case before us makes clear its import for the law of conditional use zoning. Specifically, the implication of the Court of Appeals' conclusion is that, in order for the rezoning of this property to CU-M-2 to be legal and proper, it must not only be true that the limited uses prescribed by the conditional use permit be suitable uses, but it must also be true that *any* use permitted under the general M-2 classification be a suitable use

on the facts of this case. In the opinion of this Court, this is not and should not be the law in this State.

First, the Court of Appeals improperly relied upon our decision in *Allred*, a general and not a conditional use zoning case, for support of its conclusion. In *Allred*, the facts revealed that, pursuant to a comprehensive zoning ordinance, the City of Raleigh, North Carolina, was divided into thirteen classes of districts or zones, inclusive of five residential districts or zones designated R-4, R-6, R-10, R-20, and R-30. *Allred v. City of Raleigh*, 277 N.C. 530, 178 S.E. 2d 432 (1971). The complained-of rezoning was that from one general district or zone, R-4, to another general district or zone, R-10. *Id.* This Court held that the property in question could be rezoned "only if and when its location and the surrounding circumstances are such that the property should be made available for all uses permitted in an R-10 district." *Id.* at 545, 178 S.E. 2d at 440-41. While this is an accurate statement of North Carolina law with regard to rezoning from one general district to another general district, it is not authority in cases such as this involving rezoning from a general district to a conditional use district.

Second, the Court of Appeals' extension of the *Allred* "available for all uses" restriction to rezonings like that in the case at bar is completely at odds with the concept of conditional use zoning and all of its attendant benefits. As discussed above, the practice of conditional use zoning is a vehicle by which local zoning authorities can acquire greater flexibility in land use planning. Turning to the facts at hand for purposes of illustration, rezoning Mr. Clapp's two tracts to a conditional use zone—specifically, CU-M-2—allows a desired use—here, the storage and sale of certain agricultural chemicals—which is not drastically at odds with other uses in the predecessor zone. However, such rezoning would not allow uses perhaps allowable under the general M-2 Industrial zone which are more clearly inconsistent with ongoing uses under the predecessor zone.

Under the reasoning employed by the Court of Appeals, in order for the desired rezoning here to CU-M-2 to be legal and proper, Mr. Clapp's two tracts of land must be suitable for all uses possible, not pursuant to the conditions set out in the conditional use permit, but under the general M-2 Industrial zone. As

the City of Greensboro and the City of Charlotte correctly point out in their joint *amicus curiae* brief, if a given tract of land is suited to all uses allowed in the corresponding general use district — here, M-2 Industrial — the purposes served, and the benefits provided by, conditional use districts would be negated entirely.

[2]  Accordingly, we hold today that, contrary to the conclusion reached by the Court of Appeals below, it is not necessary that property rezoned to a conditional use district be available for all of the uses allowed under the corresponding general use district. In so holding, we join several other jurisdictions which have reached the same conclusion. *See Bucholz v. City of Omaha*, 174 Neb. 862, 120 N.W. 2d 270 (1963); *Zupancic v. Schimenz*, 46 Wis. 2d 22, 174 N.W. 2d 533 (1970).

## II.

We turn now to the question of spot zoning. As we noted above, in its opinion below, the Court of Appeals held that the rezoning at issue here — namely, the rezoning of Mr. Clapp's two tracts from A-1 to CU-M-2 — constituted an illegal form of "spot zoning" and was therefore void. In arriving at its holding, the Court of Appeals concluded that Guilford County had "failed to show a reasonable basis" for the rezoning in question and cited three principal reasons for its conclusion: (1) the rezoning was not called for by any change of conditions on the land; (2) the rezoning was not called for by the character of the district and the particular characteristics of the area being rezoned; and (3) the rezoning was not called for by the classification and use of nearby land.

While this Court agrees with some portions of the analysis employed by the Court of Appeals, we must disagree with that court's final conclusion. In our firmly held view, the rezoning accomplished in this case, while admittedly constituting a form of spot zoning, constituted a legal, and *not* an illegal form of spot zoning. Notwithstanding the Court of Appeals' conclusion to the contrary, we find that, on the facts of this case, the county did show a reasonable basis for the rezoning at issue. Moreover, while this is a case of first impression in that it involves the practice of conditional use zoning, we find our result to be consistent with related zoning cases from other jurisdictions. Accordingly, the Court of Appeals is reversed on this question.

We note as an initial matter that there is substantial disagreement amongst jurisdictions across the nation as to both the proper definition of and the legal significance of the term "spot zoning." Jurisdictions have essentially divided into two distinct camps. One group, the majority of jurisdictions, regards the term "spot zoning" as a legal term of art referring to a practice which is per se invalid. *See* 2 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 28.01 (4th ed. 1987); 1 R. Anderson, *American Law of Zoning* § 5.12 (3d ed. 1986); 2 E. Yokley, *Zoning Law and Practice* § 13-3 (4th ed. 1978). In such jurisdictions, a judicial determination that a given rezoning action constitutes spot zoning is, ipso facto, a determination that the rezoning action is void.

The position of this first group has been described by one commentator as follows:

Spot zoning amendments are those which by their terms single out a particular lot or parcel of land, usually small in relative size, and place it in an area the land use pattern of which is inconsistent with the small lot or parcel so placed, thus projecting an inharmonious land use pattern. Such amendments are usually triggered by efforts to secure special benefits for particular property owners, without proper regard for the rights of adjacent landowners. These are the real spot zoning situations. *Under no circumstances could the tag of validity be attached thereto.*

2 E. Yokley, *Zoning Law and Practice* § 13-3 at 207 (4th ed. 1978) (emphasis added).

A somewhat smaller group of jurisdictions, including our own, has taken a different approach. In these jurisdictions, it has been stated that "spot zoning" is a descriptive term merely, rather than a legal term of art, and that spot zoning practices may be valid or invalid depending upon the facts of the specific case. *See* 2 E. Yokley, *Zoning Law and Practice* § 13-5 (4th ed. 1978); 2 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 28.01 n.1 (4th ed. 1987). *See also Tennison v. Shomette*, 38 Md. App. 1, 379 A. 2d 187 (1977); *Save Our Rural Environment v. Snohomish County*, 99 Wash. 2d 363, 662 P. 2d 816 (1983) (holding that the practice of spot zoning is not invalid per se). Unlike in the majority of jurisdictions, in these jurisdictions, a spot zoning case

poses, not merely the lone question of whether what occurred on the facts constituted spot zoning. It also poses the additional question of whether the zoning action, if spot zoning, was of the legal or illegal variety.

We are firmly amongst this latter group of jurisdictions which has held that spot zoning is not invalid per se. For example, in this Court's opinion in *Blades v. City of Raleigh*, 280 N.C. 531, 187 S.E. 2d 35 (1972), we defined "spot zoning" as follows:

> A zoning ordinance, or amendment, which singles out and reclassifies a relatively small tract owned by a single person and surrounded by a much larger area uniformly zoned, so as to impose upon the small tract greater restrictions than those imposed upon the larger area, or so as to relieve the small tract from restrictions to which the rest of the area is subjected, is called "spot zoning."

*Id.* at 549, 187 S.E. 2d at 45. However, having so defined the practice, we hastened to add that the practice is not invalid per se but, rather, that it is beyond the authority of the municipality or county and therefore void *only* "in the absence of a clear showing of a reasonable basis" therefor. *Id.*

[3] Accordingly, in this case, and indeed in any spot zoning case in North Carolina courts, two questions must be addressed by the finder of fact: (1) did the zoning activity in the case constitute spot zoning as our courts have defined that term; and (2) if so, did the zoning authority make a clear showing of a reasonable basis for the zoning. In the case at bar, since the action by the Board was so clearly spot zoning under the *Blades* definition, this two-part inquiry can quickly be narrowed to the lone question of whether there is a clear showing of a reasonable basis. As the Court of Appeals quite correctly stated in its opinion below in this case:

> The rezoning amendment here clearly constitutes spot zoning. The rezoned area was only 8.57 acres and was uniformly surrounded by property zoned A-1. *The remaining question then is whether there was a reasonable basis for the county's action in spot zoning the 8.57 acre tract.*

*Chrismon v. Guilford County*, 85 N.C. App. 211, 215, 354 S.E. 2d 309, 312 (emphasis added).

It is at this point, however, that we differ with the decision of the Court of Appeals. As we stated above, in its opinion, the Court of Appeals concluded, after considering several different factors, that the Board of County Commissioners had failed to clearly demonstrate a reasonable basis for its zoning action and, further, that the action was therefore void. With due respect, we find the analysis employed by the Court of Appeals to be flawed. In the view of this Court, the Board did in fact clearly show a reasonable basis for its rezoning of Mr. Clapp's two tracts from A-1 to CU-M-2. We are particularly persuaded, first, by the degree of public benefit created by the zoning action here and, second, by the similarity of the proposed use of the tracts under the new conditional use zone to the uses in the surrounding A-1 areas.

[4] At the outset, we note that a judicial determination as to the existence or nonexistence of a sufficient reasonable basis in the context of spot zoning is, and must be, the "product of a complex of factors." 1 R. Anderson, *American Law of Zoning* § 5.13 at 364 (3d ed. 1986). The possible "factors" are numerous and flexible, and they exist to provide guidelines for a judicial balancing of interests. 2 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 28.01 (4th ed. 1987). Among the factors relevant to this judicial balancing are the size of the tract in question; the compatibility of the disputed zoning action with an existing comprehensive zoning plan; the benefits and detriments resulting from the zoning action for the owner of the newly zoned property, his neighbors, and the surrounding community; and the relationship between the uses envisioned under the new zoning and the uses currently present in adjacent tracts. *See id.*; 1 R. Anderson, *American Law of Zoning* § 5.13 (3d ed. 1986). Once again, the criteria are flexible, and the specific analysis used depends on the facts and circumstances of a particular case. 2 A. Rathkopf & D. Rathkopf, *The Law of Planning and Zoning* § 28.01 (4th ed. 1987).

[5] Turning our attention to the case before us, we find the latter two of the above-mentioned factors to argue forcefully for the proposition that the rezoning activity here was supported by a reasonable basis. First, the relative benefits and detriments accruing to Mr. Clapp, Mr. Chrismon, and the surrounding area as a result of the rezoning are instructive. It has been stated that the true vice of illegal spot zoning is in its inevitable effect of granting a discriminatory benefit to one landowner and a correspond-

ing detriment to the neighbors or the community without adequate public advantage or justification. 2 E. Yokley, *Zoning Law and Practice* § 13-3 (4th ed. 1978); *see Smith v. Skagit County*, 75 Wash. 2d 715, 453 P. 2d 832 (1969). Accordingly, while spot zoning which creates a great benefit for the owner of the rezoned property with only an accompanying detriment and no accompanying benefit to the community or to the public interest may well be illegal, spot zoning which provides a service needed in the community in addition to benefitting the landowner may be proper. *See* 2 E. Yokley, *Zoning Law and Practice* § 13-3 (4th ed. 1978).

Courts from other jurisdictions have held, for example, that the mere fact that an area is rezoned at the request of a single owner and is of greater benefit to him than to others does not make out a case of illegal spot zoning *if there is a public need for it. See, e.g., Jaffe v. City of Davenport*, 179 N.W. 2d 554 (Iowa 1970); *Sweeney v. City of Dover*, 108 N.H. 307, 234 A. 2d 521 (1967). The Supreme Court of New Jersey long ago announced a standard for properly weighing the various benefits and detriments created by disputed zoning activity. In a statement with which this Court agrees, that court stated as follows:

> The standard is not the advantage or detriment to particular neighboring landowners, but rather the effect upon the entire community as a social, economic and political unit. *That which makes for the exclusive and preferential benefit of such particular landowner, with no relation to the community as a whole, is not a valid exercise of this sovereign power.*

*Mansfield & Swett, Inc. v. West Orange*, 120 N.J.L. 145, 150, 198 A. 225, 233 (1938) (emphasis added).

Turning to the facts of the case at bar, it is manifest that Mr. Clapp, the owner of the tracts rezoned in this case, has reaped a benefit by the Board's action. Specifically, by virtue of the Board's decision to rezone the tracts from A-1 to CU-M-2, Mr. Clapp will be able to carry on the otherwise illegal storage and sale of agricultural chemicals on both of his two tracts along Gun Shop Road in rural Guilford County. It is also beyond question that the plaintiffs in this case, the Chrismons, have simultaneously sustained a detriment. They, of course, would prefer that Mr. Clapp carry on his agricultural chemical operation somewhere other than next door to their home. Notwithstanding this, and

consistent with the authority excerpted above, it is important, in our view, to consider this in the added context of both the benefits of the rezoning for the surrounding community and for the public interest.

As the Court of Appeals quite correctly conceded in its opinion below, "[t]he evidence clearly shows that Mr. Clapp's operation is beneficial to area farmers." *Chrismon v. Guilford County*, 85 N.C. App. 211, 218, 354 S.E. 2d 309, 313-14. The record reveals that members of the farming community surrounding the disputed land spoke in favor of the rezoning action during a meeting of the Guilford County Board of Commissioners prior to the ultimate meeting of 20 December 1982. Moreover, the record also reveals that, at one of the Board's meetings concerning the proposed rezoning, the Board was presented with a petition signed by some eighty-eight area residents favoring the action. While this Court understands that it was the Chrismons alone who lived next door to the operation, we do note that it was the Chrismons, *and no one else*, who spoke up against the rezoning.

In addition to this record evidence of substantial community support for Mr. Clapp's proposed use, there is additional and more objective evidence that the operation constitutes a use valuable to the surrounding community. The area in the vicinity of Mr. Clapp's operation is zoned for some miles as exclusively A-1 and is used by many for farming activities. Quite independent of the indications from members of the community that they have a subjective need for Mr. Clapp's services, it cannot be gainsaid that services of this type—namely, the storage and sale of pesticides, lime, and fertilizer—are valuable in a farming community such as that here. It has been held elsewhere that community-wide need for commercial or industrial facilities usually takes precedence over the objections of several adjacent property owners. *See Citizens Ass'n of Georgetown, Inc. v. D.C. Zoning Comm'n*, 402 A. 2d 36 (D.C. App. 1979). We believe that to be the case here.

A second factor that we find important in the determination of a reasonable basis for the spot zoning here is the similarity between the proposed use of the tracts under the new conditional use zone and the uses already present in surrounding areas. In its opinion in this case, the Court of Appeals stated as follows:

The only finding of fact which would arguably allow the trial court to conclude that the rezoning was supported by a reasonable basis is that *the uses actually authorized were not incompatible with the general area. . . .* We cannot agree.

*Chrismon v. Guilford County*, 85 N.C. App. 211, 218, 354 S.E. 2d 309, 313-14 (emphasis added). We disagree strongly with the Court of Appeals on this point. In our view, even in the wake of the rezoning of Mr. Clapp's tracts to CU-M-2, the uses present in the rezoned area and the surrounding A-1 area will remain, by virtue of the restrictions inherent in conditional use zoning, quite similar. At the very least, the differences in the uses will certainly not be vast, as is often the situation in a case of illegal spot zoning.

The compatibility of the uses envisioned in the rezoned tract with the uses already present in surrounding areas is considered an important factor in determining the validity of a spot zoning action. 2 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 28.04 (4th ed. 1987); 1 R. Anderson, *American Law of Zoning* § 5.16 (3d ed. 1986). One commentator addressed this factor as follows:

> In determining whether a zoning amendment constitutes spot zoning, the courts will consider the character of the area which surrounds the parcel reclassified by the amendment. *Most likely to be found invalid is an amendment which re-classifies land in a manner inconsistent with the surrounding neighborhood.*

1 R. Anderson, *American Law of Zoning* § 5.16 at 383 (3d ed. 1986) (emphasis added). One court has described the evil to be avoided as "an attempt to *wrench* a single small lot from its environment and give it a new rating *which disturbs the tenor of the neighborhood.*" *Magnin v. Zoning Commission*, 145 Conn. 26, 28, 138 A. 2d 522, 523 (1958) (emphasis added). We see no such disturbance on the facts before us.

While significant disturbances such as the rezoning of a parcel in an old and well-established residential district to a commercial or industrial district would clearly be objectionable, *see, e.g., Mraz v. County Comm'rs of Cecil County*, 291 Md. 81, 433 A. 2d 771 (1981), this is clearly not such a case. We note first that, in

actuality, the rezoning of the tracts in question from A-1 to CU-M-2, with all of the attendant restrictions and conditions, really represents very little change. The A-1 classification, as we stated earlier in our review of the facts of this case, allows all of Mr. Clapp's current operation except for the storage and sale of *agricultural chemicals*. The most noticeable activity, and the activity we suspect the plaintiffs would most like to be rid of—namely, the storage and sale of grain—is a conforming use under the A-1 classification and can legally continue irrespective of any zoning change. In addition, the conditions accompanying the disputed rezoning in the form of the conditional use permit essentially restrict Mr. Clapp to the very activities in which he is currently engaging—the storage and sale of agricultural chemicals—and nothing more.

Second, this is simply not a situation like that alluded to above in which a radically different land use, by virtue of a zoning action, appears in the midst of a uniform and drastically distinct area. No parcel has been "wrenched" out of the Guilford County landscape and rezoned in a manner that "disturbs the tenor of the neighborhood." As we have noted on several occasions, the area surrounding the tracts in question is uniformly zoned as A-1 agricultural. The A-1 district, a general use district in the Guilford County comprehensive zoning scheme, provides for a wide variety of uses. Conforming uses under the A-1 district include such disparate uses as single family dwellings, sawmills, fish or fowl hatcheries, farms, hospitals, and grain mills like the one Mr. Clapp was in fact operating here. In our view, the use of the newly rezoned tracts, pursuant to a CU-M-2 assignment, to store and sell agricultural chemicals is simply not the sort of drastic change from possible surrounding uses which constitutes illegal spot zoning.

Our research has revealed a case from another jurisdiction, *Earle v. McCarthy*, 28 Or. App. 539, 560 P. 2d 665 (1977), which is strikingly similar on the facts to that before us today. While the court was not specifically called upon there to address a spot zoning challenge, it upheld the issuance of a conditional use permit.

In *Earle*, the Marion County Board of Commissioners granted defendant a conditional use permit for the construction of a hop warehouse. The warehouse was to store a rather large volume of

crops from many local hop growers and was, in addition, to store and sell string and burlap used in hop production. The proposed site of the warehouse was in an area of land designated pursuant to the local zoning ordinance as an EFU (Exclusive Farm Use) zone, the purpose of which was as follows:

> "The purpose and intent of the Exclusive Farm Use zone is to provide areas for the continued practice of agriculture and permit the establishment of *only those new uses which are compatible to agricultural activities."*

*Earle v. McCarthy,* 28 Or. App. 539, 542, 560 P. 2d 665, 666 (quoting local ordinance) (emphasis added).

Owners of land near the proposed site of the warehouse challenged the action of the local board. In the view of the court, the warehouse constituted, pursuant to the relevant ordinance, a commercial activity in conjunction with farm use and was therefore a proper use even within an exclusive farm use zone. In our opinion, the parallels between the Oregon case and that before us are striking. The relationship between the hop warehouse and the surrounding EFU zone in the Oregon case, in our view, mirrors the relationship between Mr. Clapp's agricultural chemical operation and the adjacent A-1 district in this case. Here, as there, the local authority's activity was proper.

As we noted earlier in this section, cases involving a challenge to a rezoning action on the basis of possible illegal spot zoning are very fact specific; their resolution turns very heavily on the particular facts and circumstances of the case. This spot zoning case, in which the disputed action changed a general district zone to a *conditional use zone,* is, for that reason, a case of first impression. While this Court has addressed the issue of spot zoning in North Carolina cases involving rezoning from one general district to another, the facts of these cases are not analogous to this case and are therefore not helpful.

In sum then, while we agree with the Court of Appeals that the rezoning of Mr. Clapp's two tracts constituted a form of spot zoning under the *Blades* definition, we find, contrary to its conclusion, that this activity was of the legal and not illegal variety. More precisely, we find that, because of the quite substantial benefits created for the surrounding community by the rezoning

and because of the close relationship between the likely uses of the rezoned property and the uses already present in the surrounding tracts, there was a clear showing of a reasonable basis for the spot zoning in this instance. It is therefore not void, and the Court of Appeals is reversed as to this point.

### III.

We turn finally to the question of contract zoning. As we stated above, in its opinion below, the Court of Appeals also held that the rezoning in question constituted illegal "contract zoning" and was therefore invalid and void for that alternative reason. Relying for support primarily on this Court's decision in *Allred v. City of Raleigh*, 277 N.C. 530, 178 S.E. 2d 432, the Court of Appeals stated, in relevant part, as follows:

> [T]he county's action here also constitutes "contract zoning." Rezoning lacks a permissible basis where it is done "on consideration of assurances that a particular tract or parcel will be developed in accordance with restricted approval plans." [*Allred*, 277 N.C.] at 545, 178 S.E. 2d at 441.

> . . . In effect, the rezoning was done on the assurance that Mr. Clapp would submit an application for a conditional use permit specifying that he would use the property only in that manner. The rezoning here was accomplished as a direct consequence of the conditions agreed to by the applicant rather than as a valid exercise of the county's legislative discretion.

*Chrismon v. Guilford County*, 85 N.C. App. 211, 219, 354 S.E. 2d 309, 314 (citations omitted).

We must disagree with the Court of Appeals. In the view of this Court, the Court of Appeals, in its approach to the question of whether the rezoning at issue in this case constituted illegal contract zoning, improperly considered as equals two very different concepts — namely, valid conditional use zoning and illegal contract zoning. By virtue of this treatment of the two quite distinguishable concepts, the Court of Appeals has, for all intents and purposes, outlawed conditional use zoning in North Carolina by equating this beneficial land planning tool with a practice universally considered illegal. In fact, for the reasons we will develop below, the two concepts are not to be considered synony-

mous. Moreover, we hold that the rezoning at issue in this case—namely, the rezoning of Mr. Clapp's two tracts of land from A-1 to CU-M-2—was, in truth, valid conditional use zoning and *not* illegal contract zoning.

Illegal contract zoning properly connotes a transaction wherein both the landowner who is seeking a certain zoning action and the zoning authority itself undertake reciprocal obligations in the context of a *bilateral* contract. Shapiro, *The Case for Conditional Zoning*, 41 Temp. L.Q. 267 (1968); D. Mandelker, *Land Use Law* § 6.59 (1982). One commentator provides as illustration the following example:

> A Council enters into an agreement with the landowner and then enacts a zoning amendment. *The agreement, however, includes not merely the promise of the owner to subject his property to deed restrictions; the Council also binds itself to enact the amendment and not to alter the zoning change for a specified period of time.* Most courts will conclude that by agreeing to curtail its legislative power, the Council acted ultra vires. Such contract zoning is illegal and the rezoning is therefore a nullity.

Shapiro, *The Case for Conditional Zoning*, 41 Temp. L.Q. 267, 269 (1968) (emphasis added). As the excerpted illustration suggests, contract zoning of this type is objectionable primarily because it represents an abandonment on the part of the zoning authority of its duty to exercise independent judgment in making zoning decisions. *See id.; see generally* Wegner, *Moving Toward the Bargaining Table: Contract Zoning, Development Agreements, and the Theoretical Foundations of Governmental Land Use Deals*, 65 N.C.L. Rev. 957 (1987).

As we indicated in Part I above, valid conditional use zoning, on the other hand, is an entirely different matter. Conditional use zoning, to repeat, is an outgrowth of the need for a compromise between the interests of the developer who is seeking appropriate rezoning for his tract and the community on the one hand and the interests of the neighboring landowners who will suffer if the most intensive use permitted by the new classification is instituted. One commentator has described its mechanics as follows:

>An orthodox conditional zoning situation occurs when a zoning authority, *without committing its own power,* secures a property owner's agreement to subject his tract to certain restrictions as a prerequisite to rezoning. These restrictions may require that the rezoned property be limited to just one of the uses permitted in the new classification; or particular physical improvements and maintenance requirements may be imposed.

Shapiro, *The Case For Conditional Zoning,* 41 Temp. L.Q. 267, 270-71 (1968) (emphasis added).

[6] In our view, therefore, the principal differences between valid conditional use zoning and illegal contract zoning are related and are essentially two in number. First, valid conditional use zoning features merely a unilateral promise from the landowner to the local zoning authority as to the landowner's intended use of the land in question, while illegal contract zoning anticipates a bilateral contract in which the landowner and the zoning authority make reciprocal promises. Second, in the context of conditional use zoning, the local zoning authority maintains its independent decision-making authority, while in the contract zoning scenario, it abandons that authority by binding itself contractually with the landowner seeking a zoning amendment.

[7] The Court of Appeals, in its opinion in this case, determined that "[t]he rezoning here was accomplished as a direct consequence of the conditions agreed to by the applicant rather than as a valid exercise of the county's legislative discretion." *Chrismon v. Guilford County,* 85 N.C. App. 211, 219, 354 S.E. 2d 309, 314. In so doing, it concluded, in essence, that the zoning authority here — namely, the Guilford County Board of Commissioners — entered into a bilateral agreement, thereby abandoning its proper role as an independent decision-maker and rendering this rezoning action void as illegal contract zoning. This Court disagrees. We conclude that *the zoning authority neither entered into a bilateral contract nor abandoned its position as an independent decision-maker.* Therefore, we find what occurred in the case before us to constitute valid conditional use zoning and *not* illegal contract zoning.

First, having carefully reviewed the record in the case, we find no evidence that the local zoning authority — here, the Guilford County Board of Commissioners — entered into anything ap-

proaching a bilateral contract with the landowner—here, Mr. Clapp. The facts of the case reveal that, pursuant to a filed complaint from the Chrismons, the Guilford County Inspections Department, by a letter dated 22 July 1982, notified Mr. Clapp that his expansion of the agricultural chemical operation to the tract adjacent to plaintiffs' lot constituted an impermissible expansion of a nonconforming use. More important for purposes of this issue, the letter informed Mr. Clapp of his various options in the following manner:

> Mr. Clapp, there are several courses of action available to you in an effort to resolve your Zoning Ordinance violations:
>
> . . . .
>
> 2. You may request rezoning of that portion of your land involved in the violations. *This is not a guaranteed option.*

Shortly after receiving this letter, Mr. Clapp applied to have both of his tracts of land—the 3.18-acre tract north of Gun Shop Road and the 5.06-acre tract south of Gun Shop Road—rezoned from A-1 to CU-M-2. He also filed written application for a conditional use permit, specifying in the application that he would continue to use the property as it was then being used and, in addition, listing those changes he would like to make in the succeeding five years. While these applications were ultimately approved by the Guilford County Board of Commissioners after a substantial period of deliberation which we highlight below, we are quite satisfied that the only promises made in this case were unilateral —specifically, those from Mr. Clapp to the Board in the form of the substance of his conditional use permit application. As the letter excerpted above makes clear, no promises whatever were made by the Board in exchange, and this rezoning does not therefore fall into the category of illegal contract zoning.

Second, and perhaps more important, the Board did not, by virtue of its actions in this case, abandon its position as an independent decision-maker. The Court of Appeals concluded that, rather than from a "valid exercise of the county's legislative discretion," the Board's decision in this zoning matter in fact resulted from an illegal bargain between the Board and the landowner, Mr. Clapp. This conclusion by the Court of Appeals is, in

our view, at odds with the facts developed in the record. On the contrary, we find that the Board made its decision in this matter only after a lengthy deliberation completely consistent with both the procedure called for by the relevant zoning ordinance and the rules prohibiting illegal contract zoning.

The Guilford County Zoning Ordinance provides appropriate procedures to be used by landowners wishing to apply for rezonings to a conditional use district and for conditional use permits. Pursuant to the ordinance, a landowner must apply separately for rezoning to the appropriate conditional use district and for the conditional use permit. This second petition—that for the conditional use permit—must provide specific details of the applicant's proposed use of the land affected by the potential permit. Petitions are directed to the Guilford County Board of Commissioners and are filed initially in the office of the Planning Department. The Planning Director submits the petition and the Planning Department's recommendation to the Planning Board. The Planning Board subsequently makes advisory recommendations to the Board of County Commissioners, which, following a public hearing held pursuant to proper notice, makes the final decision as to whether the rezoning application and the permit will be approved or disapproved.

It is undisputed, and plaintiffs conceded as much upon oral argument before this Court, that all procedural requirements were observed in this case. As we indicated above, shortly after the Guilford County Inspections Department notified Mr. Clapp of his violation, he submitted an application for a rezoning of the tracts in question. Simultaneously, he applied for a conditional use permit, specifying how the property was then being used and, in addition, listing those improvements he would like to make in the future. The Planning Division recommended that the property be rezoned accordingly, and the Guilford County Planning Board voted to approve that recommendation at their meeting of 8 September 1982.

Pursuant to proper notice, the Guilford County Board of Commissioners held a public meeting on 20 December 1982 regarding both applications and heard numerous statements from all of the concerned parties. During at least one previous meeting, members of the community had spoken in favor of Mr. Clapp's re-

zoning request, numerous ideas had been introduced concerning use of the property, and the Board was presented with a petition signed by eighty-eight persons favoring the rezoning request. While the Court of Appeals' opinion seems to suggest that the ultimate result of the 20 December 1982 meeting was a foregone conclusion, the record simply does not reveal as much. Instead, the record reveals that the Board made its final decision only after what appears to have been a thorough consideration of the merits of Mr. Clapp's applications for rezoning and for a conditional use permit, as well as of the various alternatives to granting those applications.[4]

While the Court of Appeals concluded that the decision at issue here by the Guilford County Board of Commissioners was not the result of "a valid exercise of the county's legislative discretion," we find just the opposite. The record in the case, in our view, while it reveals a unilateral promise from Mr. Clapp to the Board concerning his proposed use of the tracts, does not demonstrate the reciprocity featured in cases of illegal contract zoning. Moreover, the record also demonstrates, we think quite clearly, that the Board did not abandon its role as an independent decision-maker. Rather, after deliberating over information gathered from a large number of sources and after weighing both the desired rezoning and permit as well as various alternatives, the Board rendered a decision. In short, then, we find that the Board engaged here, *not* in illegal contract zoning, but in valid conditional use zoning. Accordingly, the Court of Appeals is reversed as to this issue as well.

## IV.

In conclusion, this Court has carefully reviewed the record in its entirety and all of the contentions of the parties to this action. Consistent with the above, we hold as follows: (1) the practice of conditional use zoning, insofar as it is reasonable, neither ar-

4. The official minutes of the 20 December 1982 Board of Commissioners meeting reveal discussion of "attempts [that] had been made to resolve differences between the owner and his neighbors." These attempts to resolve the problem short of rezoning the property apparently included the removal of one grain dryer from the property, the planting of trees along the property line, the placement of canvas covers over the grain bins, and discussions with the Environmental Protection Agency concerning other ways of reducing dust and noise.

bitrary nor unduly discriminatory, and in the public interest and, subject to our discussions of spot zoning and contract zoning above, is an approved practice in this state; (2) the rezoning in this case, while clearly spot zoning, was not *illegal* spot zoning in that it was done pursuant to a clear showing of a reasonable basis; and (3) the rezoning in this case, because the Board neither entered into a bilateral agreement nor abandoned its place as the independent decision-maker, was not illegal contract zoning.

Accordingly, the decision of the Court of Appeals is hereby reversed. The case is remanded to that court for further remand to the Superior Court, Guilford County, for reinstatement of the original judgment denying plaintiffs' action for a declaratory judgment and affirming the zoning action of the Guilford County Board of Commissioners.

Reversed.

Justice MITCHELL dissenting.

The zoning amendment and conditional use permit in this case amounted to written *acceptance* by Guilford County of Clapp's *offer*—by written application—to use his property only in certain ways. Thus, for reasons fully discussed in the opinion of the Court of Appeals, 85 N.C. App. 211, 354 S.E. 2d 309 (1987), Guilford County's actions in the present case also amounted to illegal "contract zoning." *See Blades v. City of Raleigh,* 280 N.C. 531, 187 S.E. 2d 35 (1972); *Allred v. City of Raleigh,* 277 N.C. 530, 178 S.E. 2d 432 (1971).

I believe that Guilford County was without authority to engage in any conditional use zoning whatsoever in 1982, the time it did so in the present case. Effective 4 July 1985, the General Assembly amended N.C.G.S. § 153A-342 and N.C.G.S. § 160A-382 to allow cities and counties to establish conditional use districts. 1985 N.C. Sess. Laws ch. 607. Although the act was entitled an act to "make clear" the authority of local governments to establish such districts, I do not believe that the title controls in this case. Courts need refer to the title in construing an act only when the meaning of the act is in doubt. *Finance Corp. v. Scheidt, Comr. of Motor Vehicles,* 249 N.C. 334, 106 S.E. 2d 555 (1959). Here, the 1985 act expressly authorizes units of local government

to establish conditional use districts upon a petition by the owners of all the property to be included. Prior to that enactment, units of local government did not have such authority. *See generally Blades v. City of Raleigh*, 280 N.C. 531, 187 S.E. 2d 35; *Allred v. City of Raleigh*, 277 N.C. 530, 178 S.E. 2d 432. Therefore, the action of the General Assembly is fully consistent with the ordinary presumption that, by amending an existing statute, the legislature intended a departure from the old law. *See Childers v. Parker's, Inc.*, 274 N.C. 256, 162 S.E. 2d 481 (1968).

The majority cites numerous scholarly authorities in support of its very thorough discussion of social policy arguments in favor of conditional use zoning. Boiled down to their essence, these arguments simply amount to an expression of the majority's view that the authority to engage in conditional use zoning will give planners and local governing authorities greater flexibility and that such flexibility is very valuable. Beyond question, conditional use zoning authority will give them greater flexibility. Because I believe that the General Assembly had not authorized conditional use zoning at the time in question here, I find it unnecessary to consider whether conditional use zoning gives so much "flexibility" to local planners and governing bodies that they are left free to allow or disapprove specific uses of property in an unconstitutionally arbitrary and unpredictable manner.

For the foregoing reasons, I dissent.

Justice WEBB joins in this dissenting opinion.

Justice WEBB dissenting.

I join in the dissent of Justice Mitchell and I add a few comments. It appears to me the majority has overruled *Blades v. City of Raleigh*, 280 N.C. 531, 187 S.E. 2d 35 (1972) and *Allred v. City of Raleigh*, 277 N.C. 530, 178 S.E. 2d 432 (1971). In an attempt to distinguish *Blades* and *Allred* from this case the majority goes to some length in explaining the difference between what it says is valid conditional use zoning and illegal contract zoning. The difficulty for me with the majority opinion is that the definitions it uses for conditional use zoning and contract zoning are contrary to the holdings of *Blades* and *Allred*.

Chrismon v. Guilford County

The majority says:

> In our view, therefore, the principal differences between valid conditional use zoning and illegal contract zoning are related and are essentially two in number. First, valid conditional use zoning features merely a unilateral promise from the landowner to the local zoning authority as to the landowner's intended use of the land in question, while illegal contract zoning anticipates a bilateral contract in which the landowner and the zoning authority make reciprocal promises. Second, in the context of conditional use zoning, the local zoning authority maintains its independent decision-making authority, while in the contract zoning scenario, it abandons that authority by binding itself contractually with the landowner seeking a zoning amendment.

This definition simply does not square with *Blades* and *Allred*. The facts in each of those two cases were that a landowner petitioned the City of Raleigh for a change in the zoning ordinance. In each case the landowner submitted plans for the buildings he would construct if the change was made. The City Council in each case rezoned the property as requested by the landowner. This Court in each case held this was illegal contract zoning. There was no more evidence in either case that there was a bilateral contract or any reciprocal promises than there is in this case. There was no more evidence in those cases than there is in this case that the zoning board abandoned its independent decision making authority. In my opinion *Blades* and *Allred* are indistinguishable from this case.

I believe that prior to today the rule was that if a person requested a zoning change and submitted plans of the type building he would construct if the change were granted, and the zoning authority made the change based on the promise to construct such a building, that would be contract zoning. We have held contrary to this and in doing so have overruled *Blades* and *Allred*.

I vote to affirm the Court of Appeals.

Justice MITCHELL joins in this dissenting opinion.