WILLIAM DOUGLAS CHRISMON AND WIFE, EVELYN B. CHRISMON v. GUIL-
FORD COUNTY; FORREST E. CAMPBELL, PAUL W. CLAPP, OGDEN
DEAL, DOROTHY KEARNS, FRED L. PREYER, MEMBERS OF THE BOARD OF
COMMISSIONERS OF GUILFORD COUNTY; AND BRUCE CLAPP

No. 8618SC870

(Filed 7 April 1987)

**Municipal Corporations § 30.9— rezoning—conditional use district—spot zoning
and contract zoning—invalid**

   The Guilford County Board of Commissioners engaged in invalid spot zon-
   ing and contract zoning when property adjacent to plaintiffs' land was rezoned
   from A-1 Agricultural to Conditional Use Industrial so that the owner of a
   nearby commercial fertilizer and related sales operation could expand his
   business where the rezoning clearly constituted spot zoning, there was no
   reasonable basis for the spot zoning, and the rezoning constituted contract zon-
   ing because it was accomplished as a direct consequence of the condition
   agreed to by the applicant rather than as a valid exercise of the county's
   legislative discretion. The fact that the property is rezoned to a conditional use
   district does not change the rule that rezoning may be done only if the location
   and surrounding circumstances are such that the property should be made
   available for all uses permitted by the zoning classification to which the prop-
   erty is rezoned. N.C.G.S. § 153A-344.

APPEAL by plaintiff from *Seay, Judge.* Judgment entered 11
April 1986 in Superior Court, GUILFORD County. Heard in the
Court of Appeals 14 January 1987.

   This is an action for a declaratory judgment concerning an
amendment to the Guilford County zoning ordinance. The under-
lying facts are not disputed. Defendant Bruce Clapp (hereinafter
referred to as "Mr. Clapp" and who is not related to defendant
Paul Clapp, a member of the Guilford County Board of Commis-
sioners) had been operating a business on a 3.18 acre tract of his
property in Rock Creek Township, Guilford County since 1948.
The business consisted of buying, drying, storing, and selling
grain as well as selling and distributing lime, fertilizer, animal
feeds, pesticides, and other farm products.

   In 1964, Guilford County adopted a comprehensive zoning or-
dinance. The ordinance zoned the 3.18 acre tract of Mr. Clapp's
land, as well as the surrounding area, "A-1 Agricultural" (A-1).
Under that classification, Mr. Clapp's grain drying and storing
operation was a permitted use but the sale and distribution of the
grain, lime, fertilizer, and other farm products was not. Because it

preexisted the ordinance, Mr. Clapp was allowed to continue that unpermitted part of his business only as a non-conforming use.

In 1969, plaintiffs purchased a tract of land from Mr. Clapp and built a home there. Plaintiffs' lot is located at the south side of the intersection of North Carolina Highway 61 and State Road 3106 ("Gun Shop Road"). Highway 61 runs north and south, while Gun Shop Road, a small, unpaved road, begins at Highway 61 and runs east. Mr. Clapp's residence is located at the north side of the intersection, directly across Gun Shop Road from the plaintiffs. The 3.18 acre tract on which the business was operated is adjacent to Mr. Clapp's residence. Across the road from that tract and adjacent to plaintiffs' lot is a 5.06 acre tract, also owned by Mr. Clapp. Prior to 1980, that tract was being used as farmland.

Beginning in 1980, Mr. Clapp moved a portion of his business operation from the 3.18 acre tract to the 5.06 acre tract adjoining plaintiffs' lot. Moreover, Mr. Clapp built some new buildings on the larger tract, erected some new grain bins, and generally enlarged his operation. Because of the increased noise, dust, and traffic caused by the expansion, plaintiffs complained to the Guilford County Inspections Department. The Inspections Department notified Mr. Clapp, by a letter dated 22 July 1982, that the expansion of his commercial fertilizer and related sales operation constituted an impermissible expansion of a non-conforming use. The letter informed him that, although the expansion was in violation of the county's zoning ordinance, he could request the rezoning of his property. The letter stated that rezoning was not guaranteed and that, if the property was not rezoned, he would have to cease all unpermitted uses on the 5.06 acre tract.

Shortly thereafter, Mr. Clapp applied to have an 8.57 acre area, which included both parcels he was presently using for his business, rezoned from A-1 to "Conditional Use Industrial District" (CU-M-2). He also applied for a conditional use permit, specifying in the application that he would use the property as it was presently being used and listing the improvements which he would like to make in the next five years. Under a CU-M-2 classification, Mr. Clapp's commercial sales operation would become a permitted use upon issuance of the conditional use permit. The Planning Board met on 8 September 1982 and voted to approve the recommendation of the Planning Division that the property be rezoned as requested.

On 20 December 1982, the Guilford County Board of Commissioners held a public hearing on the rezoning application. The Commissioners heard statements from Mr. Clapp, plaintiffs, and plaintiffs' attorney. Several other persons had spoken in favor of the rezoning at earlier Board meetings, stating that Mr. Clapp's business provided a service to the farmers in the area. The Board had also been presented with a petition, signed by 88 persons in favor of the rezoning. The Commissioners then voted to rezone the described 8.57 acre area from A-1 to CU-M-2 and, as part of the same resolution, summarily approved the conditional use permit application.

As a result of the county's decision to rezone the property, plaintiff brought this action seeking to have both the zoning amendment and the issuance of the conditional use permit declared invalid. After trial without a jury, the trial court found that the sale and distribution of the farm products in question was compatible with the agricultural needs of the area and that Mr. Clapp would have been entitled to an M-2 zoning classification at the time the original ordinance was passed. The court concluded that the rezoning was not "spot zoning" or "contract zoning" and that the county had not acted arbitrarily. The court made no findings of fact or conclusions of law regarding the issuance of the conditional use permit.

*Gunn & Messick, by Paul S. Messick, Jr., for the plaintiff-appellant.*

*Ralph A. Walker, for the defendant-appellee Clapp.*

*Samuel M. Moore, for defendant-appellees Guilford County; Forrest E. Campbell, Paul W. Clapp, Ogden Deal, Dorothy Kearns, Fred L. Preyer, members of the Board of Commissioners of Guilford County.*

EAGLES, Judge.

There is no substantial controversy regarding the facts. Instead, the dispute is whether the facts support the county's decision to rezone the 8.57 acre area of Mr. Clapp's property. Plaintiff argues that the rezoning constitutes invalid spot zoning and contract zoning. We agree and reverse the judgment of the trial court.

Although there are a number of North Carolina cases dealing with spot zoning and contract zoning, our research has disclosed no case where those questions have arisen in the context of a zoning authority's use of "conditional use districts." For a general discussion of conditional use and special use districts and how they have been applied in North Carolina, see S. Davenport and P. Green, *Special Use and Conditional Use Districts: A Way to Impose More Specific Zoning Controls*, N.C. Inst. of Gov't (1980).

The Guilford County zoning ordinance establishes a "conditional use district" to correspond with each of its other authorized zoning districts. The only uses permitted in a conditional use district are those which the ordinance lists as permitted uses in the corresponding district. The difference between a conditional use district and its corresponding district is that, in the conditional use district, no use is permitted except upon issuance of a conditional use permit by the County's Board of Commissioners. The conditional use permit specifies the use(s) to which the property may be put along with any other restrictions which are listed in the application or which the Commissioners believe are appropriate to serve the purposes of the ordinance and secure the public safety and welfare. Here, for example, the county rezoned the 8.57 acres from an A-1 to a CU-M-2 (Conditional Use General Industrial) classification. Theoretically at least, this would allow Mr. Clapp to use the property for any of the uses permitted in a regular M-2 classification. The "conditional use" nature of the classification, however, did not permit him to use his property in any way, except as a non-conforming use, until he separately applied for and received a conditional use permit specifying the use to which he would put the property. Here, Mr. Clapp's application stated that he would "buy and sell fertilizer, lime, farm pesticides, and buy, sell, dry and store grain."

Where a property owner wishes to utilize his property for an unpermitted use by rezoning the property to a conditional use district, the ordinance sets up a two-step process. First, the rezoning itself must be applied for. Second, a conditional use permit must be applied for. The application for the conditional use permit must specify the use(s) to which the property will be put. Although the two applications are made on separate forms, the record here indicates that the applications were submitted con-

temporaneously and were approved by the Commissioners on the same vote.

G.S. 153A-344 expressly gives counties the power to amend their zoning ordinances. As a legislative function, the county's act of amending its zoning ordinance is entitled to a presumption of validity. *A-S-P Associates v. City of Raleigh*, 298 N.C. 207, 258 S.E. 2d 444 (1979). Nevertheless, zoning regulations are subject to the North Carolina Constitution's provisions proscribing arbitrary and unduly discriminatory interference with the rights of property owners as well as the limitations of the enabling statute. *Zopfi v. City of Wilmington*, 273 N.C. 430, 160 S.E. 2d 325 (1968). The legislative act of enacting or amending a zoning ordinance is invalid if it is unreasonable, arbitrary, or an unequal exercise of legislative power. *See A-S-P Associates v. City of Raleigh, supra.*

"Spot zoning" is defined as:

[a] zoning ordinance, or amendment, which singles out and reclassifies a relatively small tract owned by a single person and surrounded by a much larger area uniformly zoned, so as to impose upon the small tract greater restrictions than those imposed upon the larger area, or so as to relieve the small tract from restrictions to which the rest of the area is subjected. . . . *Blades v. City of Raleigh*, 280 N.C. 531, 549, 187 S.E. 2d 35, 45 (1972).

Zoning generally must be accomplished in accordance with a comprehensive plan in order to promote the general welfare and serve the purposes of the enabling statute. *Godfrey v. Union Co. Bd. of Commissioners*, 61 N.C. App. 100, 300 S.E. 2d 273 (1983); G.S. 153A-341. Because it zones a small area differently than a much larger area surrounding it, spot zoning, by definition, conflicts with the whole purpose of planned zoning. 2 Rathkopf, The Law of Zoning and Planning, section 28.02 (1987). Therefore, unless there is a "clear showing of a reasonable basis," spot zoning is beyond the authority of the county or municipality. *Blades v. City of Raleigh, supra* at 549, 187 S.E. 2d at 45. The rezoning amendment here clearly constitutes spot zoning. The rezoned area was only 8.57 acres and was uniformly surrounded by property zoned A-1. The remaining question then is whether there was a reasonable basis for the county's action in spot zoning the 8.57 acre tract.

An examination of the record reveals that the county has failed to show a reasonable basis for rezoning the 8.57 acre area from A-1 to CU-M-2. There is no indication of any change in conditions which would justify the rezoning. Some authorities have stated that, in order to preserve the purpose of zoning, zoning amendments should be made only when required by changing conditions. *See*, 8 McQuillan, Municipal Corporations, section 25.68 (1983). While none of our cases have stated that a change in conditions is an *absolute* prerequisite to a zoning amendment, they have often referred to a change in conditions as a factor to be considered when determining whether there was a reasonable basis for spot zoning. *See Blades v. City of Raleigh, supra; Rose v. Guilford Co.*, 60 N.C. App. 170, 298 S.E. 2d 200 (1982); *Graham v. City of Raleigh*, 55 N.C. App. 107, 284 S.E. 2d 742 (1981), *disc. rev. denied*, 305 N.C. 299, 290 S.E. 2d 702 (1982); *Stutts v. Swaim*, 30 N.C. App. 611, 228 S.E. 2d 750, *disc. rev. denied*, 291 N.C. 178, 229 S.E. 2d 692 (1976). Here, the record discloses no increase in population, farming or other business activity in the area and no increased need for industrial uses. Until the rezoning of Mr. Clapp's property, there had been no zoning changes in the area since 1972. Furthermore, a member of the county's Planning Division testified that he was not aware of any changes in the area or of anything which would have caused a need to rezone the property to a general purpose industrial district (M-2).

A second factor to which our courts have sometimes looked in determining whether there is a reasonable basis for spot zoning is the particular characteristics of the area being rezoned. In fact, G.S. 153A-341 states that, among other things, zoning regulations should be made with reasonable consideration to "the character of the district and its peculiar suitability for particular uses." In *Walker v. Elkin*, 254 N.C. 85, 118 S.E. 2d 1 (1961), for instance, the court upheld the validity of a zoning amendment, relying in part on the trial court's finding that the topography of the area made it unsuitable for the residential classification for which it was originally zoned. Likewise, in *Zopfi v. City of Wilmington, supra*, the court refused to invalidate a zoning change in which an area zoned mostly for single-family residential uses was rezoned to allow commercial and apartment house development where the rezoned area was a larger, 40 acre area which lay at the intersection of two heavily traveled highways. In *Lathan v. Bd. of Com-*

*missioners*, 47 N.C. App. 357, 267 S.E. 2d 30, *disc. review denied*, 301 N.C. 92, 273 S.E. 2d 298 (1980), however, the court held that the county there had failed to establish a reasonable basis for spot zoning even though there was evidence that the property in question was unsuitable for residential use.

In the instant case, evidence that the 8.57 acre area is within 300 feet of North Carolina Highway 61 is insufficient to establish its particular suitability for an industrial classification or its unsuitability for agricultural use. Other evidence established that: the area was not a "new industrial area," which is a term used by the ordinance to describe the areas for which an M-2 district is appropriate; an M-2 district is the "most intense and least restrictive" of the industrial zones; the property is 4-5 miles from U.S. Interstate Highway 85; other, agricultural land directly abuts Highway 61; the rezoned area is located adjacent to an unpaved road; the entire area is "rolling farmland" in nature; and, prior to 1980, Mr. Clapp had been growing tobacco on the 5.06 acre portion of the rezoned tract.

Finally, in determining whether a rezoning was invalid as spot zoning, our courts have also considered the classification and development of nearby land. In *Orange County v. Heath*, 278 N.C. 688, 180 S.E. 2d 810 (1971), the court held there was a reasonable basis for rezoning 15 acres to allow for a mobile home park where the rezoned area directly abutted 5 acres already being so used. Similarly, the court in *Nelson v. City of Burlington*, 80 N.C. App. 285, 341 S.E. 2d 739 (1986), found a reasonable basis for spot zoning to a business zone where there was other general business zoning in the immediate vicinity. In *Godfrey v. Union Co. Bd. of Commissioners*, *supra*, however, the court found no reasonable basis for rezoning 17.45 acres from single family residential to a heavy industrial classification where, although the property in question had certain characteristics which made it suitable for industrial use, it was essentially similar to the surrounding property. In the instant case, the record shows that the classification and development of adjacent and nearby land is not consistent with a CU-M-2 zone. Except for a residential district about a mile away, the surrounding property is zoned A-1 for several miles in all directions. Furthermore, twice in 1971, the county turned down applications to rezone property within a few hundred feet of the 8.57 acre tract.

The only finding of fact which would arguably allow the trial court to conclude that the rezoning was supported by a reasonable basis is that the uses actually authorized were not incompatible with the general area. The evidence clearly shows that Mr. Clapp's operation is beneficial to area farmers. Defendants contend that this evidence is sufficient to support the trial court's conclusion that the rezoning was not invalid spot zoning. We cannot agree.

As we have noted, zoning must be done in accordance with a comprehensive plan. The comprehensive plan requirement is not satisfied by the finding of a reasonable basis for a zoning change in the particular use or uses which the applicant intends to apply the rezoned property. The question is more broad. The issue is whether the rezoning itself serves the purposes enunciated in G.S. 153A-341. *See, Zopfi v. City of Wilmington, supra.* As already noted, we see no basis for rezoning the area to a general industrial district. Defendants, relying on the "conditional use" nature of the industrial classification, would apparently argue that a CU-M-2 zone is a separate and distinct district and, unlike an M-2 district, can be restricted to whatever uses are reasonable and appropriate for the surrounding area. Therefore, they argue a reasonable basis exists if the approved use itself satisfies the purposes of the enabling legislation.

Rezoning, however, may be done only if the location and surrounding circumstances are such that the property should be made available for *all* uses permitted by the zoning classification to which the property is rezoned. *Allred v. City of Raleigh*, 277 N.C. 530, 178 S.E. 2d 432 (1971). The fact that the property is rezoned to a conditional use district does not change that rule. Undoubtedly, the establishment of conditional use districts is a means to achieve greater flexibility in zoning. By definition, the county's zoning ordinance deems a conditional use district to be inappropriate for all the uses permitted in its corresponding district absent the imposition of "special conditions." It is the imposition of special conditions, through the issuance of the conditional use permit, which will make the use appropriate for the affected area. Nevertheless, in order to properly rezone the area to a conditional use district, the zoning authority initially must determine that the property, under the new zoning classification, is suitable for all the uses permitted in its corresponding district.

Here, it is evident that this was not the situation when the county rezoned the 8.57 acres of Mr. Clapp's property.

For that same reason, the county's action here also constitutes "contract zoning." Rezoning lacks a permissible basis where it is done "on consideration of assurances that a particular tract or parcel will be developed in accordance with restricted approval plans." *Id.* at 545, 178 S.E. 2d at 441. *See also, Blades v. City of Raleigh, supra; Willis v. Union County,* 77 N.C. App. 407, 335 S.E. 2d 76 (1985).

The fact that the 8.57 acres was rezoned to a conditional use district does not insulate it from the proscription against contract zoning. As noted, the record clearly shows that the impetus for the decision to rezone the property was to allow the continued sale and distribution of grain, fertilizer, and other farm products. In effect, the rezoning was done on the assurance that Mr. Clapp would submit an application for a conditional use permit specifying that he would use the property only in that manner. The rezoning here was accomplished as a direct consequence of the conditions agreed to by the applicant rather than as a valid exercise of the county's legislative discretion. Indeed, here, the two decisions, whether to rezone to the conditional use district and whether to approve the conditional use permit, were accomplished simultaneously.

Plaintiffs have argued that the commissioners were without authority to enact conditional use zoning ordinances. They argue that since the General Assembly only recently amended G.S. 153A-342 and G.S. 160A-382 to specifically allow counties to establish conditional use districts, defendants' use of them prior to that time without statutory authority was invalid. Appellees argue that the legislation referred to, "An Act To Amend The Municipal And County Zoning Enabling Acts So As To Make Clear The Authority Of Local Governments To Establish Overlay Districts And Special Use Or Conditional Use Districts," 1985 N.C. Sess. Laws, Chapter 607, purported only to remove any possible doubt as to prior county enactments' validity and to ratify the pre-statute county enactments. Because of our disposition of this matter as previously discussed, we have assumed, without deciding, that Guilford County had the authority to establish its conditional use districts prior to enactment of the 1985 legislation.

Since we have reversed the judgment of the trial court, it is unnecessary for us to address plaintiffs' remaining arguments.

Reversed and remanded.

Judges WELLS and GREENE concur.