BETHANIE C. MASSEY, *ET AL.*, PETITIONERS v. CITY OF CHARLOTTE AND ALBEMARLE LAND COMPANY, LLC, RESPONDENTS

No. COA00-905

(Filed 7 August 2001)

**Zoning— conditional use permit—quasi-judicial proceeding not required**

The trial court erred by invalidating a conditional use zoning permit allowing a commercial use in a previously residential district where the court held that conditional use zoning requires the issuance of a permit through a quasi-judicial proceeding under N.C.G.S. § 160A-381 and *Chrismon v. Guilford County*, 322 N.C. 611. *Chrismon* does not require a two-step legislative/quasi-judicial proceeding and the City did not engage in illegal contract zoning by virtue of the absence of such a proceeding. N.C.G.S. § 160A-381 states that a city may provide for the issuance of conditional use permits, but clearly does not mandate such a procedure.

Appeal by respondents from judgment entered 17 April 2000 by Judge Ben F. Tennille in Mecklenburg County Superior Court. Heard in the Court of Appeals 21 May 2001.

*Hewson Lapinel Owens, P.A., by H. L. Owens, for petitioners-appellees.*

*Robinson, Bradshaw & Hinson, P.A. by Frank E. Emory, Jr. and Stephen M. Cox, for respondent-appellant Albemarle Land Company, LLC; Robert E. Hagemann, for respondent-appellant City of Charlotte.*

TYSON, Judge.

Albemarle Land Company, LLC ("ALC") and the City of Charlotte ("City") (collectively "respondents") appeal the entry of judgment in favor of Bethanie C. Massey, *et. al* ("petitioners") invalidating the City's approval of ALC's petition for re-zoning. We reverse.

## I. Facts

On 18 June 1999, ALC filed an application with the City to rezone approximately 42 acres of "R-3" residential property, to "CC", commercial center on this property. ALC concurrently submitted an application which provided a 100-foot buffer strip between the shopping center and the neighboring landowners. ALC submitted a site plan setting forth all of the conditions restricting the use of the subject property, as required by City ordinance.

Petitioners, the neighboring landowners, filed a written petition with the City opposing the application. A public hearing on ALC's application was held before the City Council on 18 October 1999. On 15 November 1999, a majority of the City Council voted to approve ALC's application and site plan. After its decision to re-zone, the City issued to ALC a "Conditional Use District Permit."

Petitioners filed a petition for writ of *certiorari* and a complaint for declaratory judgment in the Superior Court of Mecklenburg County on 15 December 1999. ALC moved to dismiss the petition on 14 February 2000 for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. The City moved to dismiss the petition on 16 February 2000, asserting lack of subject matter jurisdiction "in that the process and decision of the Charlotte City Council . . . was a legislative process and decision and is not subject to review on *certiorari*."

## MASSEY v. CITY OF CHARLOTTE

[145 N.C. App. 345 (2001)]

On 17 April 2000, the trial court denied the motions to dismiss and granted the petition for writ of *certiorari*. Upon review of the matter, the trial court concluded as follows:

> The City . . . has attempted to implement a purely legislative system of conditional use zoning. Such a system violates N.C.G.S. § 160A-381, 382, and thus is invalid. Although conditional use zoning has been approved in North Carolina, both the courts and the legislature have limited such approval to systems which utilize a two step process—a legislative rezoning decision followed by a quasi-judicial determination of whether to issue a conditional use permit. No decision of an appellate court in this state has approved a one-step, wholly legislative, conditional use zoning procedure . . . . [T]he conditional use permit may not be written out of a system of conditional use district zoning. The City['s] . . . position . . . that its purely legislative process was proper is erroneous.

The trial court entered an order invalidating the decision of the City Council. Respondents appeal.

## II. Issues

The sole issue on appeal is whether the City had authority to engage in conditional use zoning as a purely legislative act. The trial court held that conditional use zoning requires the issuance of a conditional use permit through a quasi-judicial proceeding, and found that to "argue otherwise overlooks both the plain language of the [enabling] statute and the holding in *Chrismon v. Guilford County*, 322 N.C. 611, 370 S.E.2d 579 [(1988)]." In examining whether the City's decision to re-zone the land and approve ALC's site plan was a valid exercise of its legislative authority, we must determine (1) whether the City's actions fell within the range of permissible conditional use zoning as expressly adopted by our Supreme Court in *Chrismon*, and (2) whether the City acted within the authority of the general zoning enabling statute.

We note that subsequent to the trial court's decision invalidating the legislative process used by the City here, our legislature specifically authorized the City to implement a purely legislative model of conditional zoning. *See* N.C. Sess. Laws. ch. 84 (2000) ("conditional zoning shall not require the issuance of a conditional use or special use permit or permitting process apart from the establishment of the district and its application to particular properties . . . . Conditional

zoning decisions under this act are a legislative process . . . ."). Our decision is limited to the particular facts of this case and to the laws applicable at the time of the filing of this proceeding.

While the City issued a "Conditional Use District Permit" upon its decision to re-zone the property from "R-3" to commercial center, the trial court found that the issuance of the permit was "superfluous" and "a nullity." The trial court also found that the City engaged in a purely legislative act of conditional use zoning. Petitioners have not challenged on appeal the trial court's finding that the issuance of the "Conditional Use District Permit" was "a nullity," or that the City engaged in a purely legislative act. These findings are therefore binding on appeal. *See Moss v. City of Winston-Salem*, 254 N.C. 480, 483, 119 S.E.2d 445, 447 (1961) (citations omitted) ("The findings of fact by the court below are not challenged by any exception or assignment of error, hence they are binding on appeal.").

### III. *Chrismon v. Guilford County*

In *Chrismon v. Guilford County*, 322 N.C. 611, 370 S.E.2d 579 (1988), our Supreme Court expressly approved conditional use zoning in this State as "one of several vehicles by which greater zoning flexibility can be and has been acquired by zoning authorities." *Id.* at 618, 370 S.E.2d at 583. The Court stated that "conditional use zoning occurs when a government body, without committing its own authority, secures a given property owner's agreement to limit the use of his property to a particular use or to subject his tract to certain restrictions as a precondition to any rezoning." *Id.* (citation omitted). The Court further held that "it is not necessary that property rezoned to a conditional use district be available for all of the uses allowed under the corresponding general use district." *Id.* at 625, 370 S.E.2d at 587.

The applicant in *Chrismon* submitted a request for re-zoning, along with an additional description of the desired uses for the property. *Id.* at 615, 370 S.E.2d at 582. Similarly, in this case, ALC submitted a petition for re-zoning, as well as a site plan showing the restrictions that would be applicable to the property. In *Chrismon*, as here, the zoning authority held a public hearing and voted, in a single proceeding, to re-zone the land subject to the proposed restrictions or conditions. *Id.*

The Supreme Court reversed this Court's holding in *Chrismon* that the re-zoning decision was illegal "spot" zoning and illegal "contract" zoning. *Id.* at 613, 370 S.E.2d at 581. The Court held that the

conditional use zoning decision was valid, so long as it was "reasonable, neither arbitrary nor unduly discriminatory, and in the public interest." *Id.* at 622, 370 S.E.2d at 586.

In the present case, the trial court analyzed the *Chrismon* decision to support its position that the City's purely legislative method of conditional use zoning was invalid. The trial court here made the finding that "it is clear that the quasi-judicial aspect of the zoning decision [in *Chrismon*] was central to the court's decision to uphold conditional use district zoning."

We disagree with the trial court's interpretation of *Chrismon*. Nowhere in the *Chrismon* decision does our Supreme Court hold that a quasi-judicial process is *required* in order for conditional use zoning to be valid. To the contrary, the Supreme Court's holding was stated as follows:

> [W]e hold today that the practice of conditional use zoning is an approved practice in North Carolina, so long as the action of the local zoning authority in accomplishing the zoning is reasonable, neither arbitrary nor unduly discriminatory, and in the public interest.

*Id.* at 617, 370 S.E.2d at 583. This standard of review for conditional use zoning adopted by the Supreme Court is the standard of review for a legislative decision. *See, e.g., Zopfi v. City of Wilmington,* 273 N.C. 430, 434, 160 S.E.2d 325, 330-31 (1968) (citations omitted) (legislative function of zoning subject only to limitations forbidding arbitrary and unduly discriminatory interference with the rights of property owners and to limitations of enabling statute).

The trial court in this case found, as part of its policy reasons for requiring the quasi-judicial process, that this standard "does not adequately protect neighboring landowners who seek to prevent specific uses of adjacent property." However, the trial court is without authority to disregard the applicable standard of review as set forth by our Supreme Court, as are we. *See, e.g., State v. Nolen,* 144 N.C. App. 172, —— S.E.2d —— (2001) ("[W]e are bound by the decisions of the Supreme Court.").

The trial court's conclusion that the quasi-judicial process was central to the Supreme Court's holding in *Chrismon* is also erroneous because a review of the procedures used in *Chrismon* does not reveal evidence of the requirements for an independent quasi-judicial hearing. Such a hearing involves all due process requirements,

including: an evidentiary hearing in which parties offer evidence; the cross-examination of adverse witnesses; the right to inspect documents; the giving of sworn testimony; and the right to have written findings of fact supported by competent, substantial, and material evidence. *Devaney v. City of Burlington*, 143 N.C. App. 334, 337, 545 S.E.2d 763, 765 (2001) (citing *County of Lancaster v. Mecklenburg County*, 334 N.C. 496, 507-08, 434 S.E.2d 604, 612 (1993)).

To the contrary, nothing in *Chrismon* suggests that the local authority made findings of fact, nor did "the trial court [make] . . . findings of fact [or] conclusions of law with regard to the issuance of the conditional use permit." *Id.* at 615, 307 S.E.2d at 582. Further, the Guilford County Zoning Ordinance, under which the re-zoning decision was made and reviewed by the Supreme Court in *Chrismon*, did not require a separate, quasi-judicial proceeding for adoption of the conditional use permit. *Id.* at 638, 370 S.E.2d at 595. Although the ordinance required that an applicant apply separately for re-zoning and a conditional use permit, the ordinance allowed for both to be approved or disapproved in a single, public hearing held before the Board of County Commissioners. *Id.*

Also absent from *Chrismon* is any mention of the appropriate standard of review upon a quasi-judicial decision. That standard of review, based upon review of the whole record, involves the following:

> 1) Reviewing the record for errors in law, 2) Insuring that procedures specified by law by both statute and ordinance are followed, 3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents, 4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and 5) Insuring that decisions are not arbitrary and capricious.

*Abernethy v. Town of Boone Board of Adjustment*, 109 N.C. App. 459, 462, 427 S.E.2d 875, 876-77 (1993) (citation omitted); *Coastal Ready-Mix Concrete Co. v. Board of Comm'rs*, 299 N.C. 620, 626, 265 S.E.2d 379, 383, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980).

In *Chrismon*, as in this case, a public hearing was held on the zoning application where the Board of Commissioners was able to hear statements from both sides. Following consideration of the matter, the Board voted to re-zone the land "and as a part of the same res-

olution, they also voted to approve the conditional use permit application." *Id.* at 615, 370 S.E.2d at 582. Nothing in *Chrismon* suggests that the Board engaged in a two-step, part legislative, part quasi-judicial process which would warrant the "competent and material evidence" standard of review. Rather, the re-zoning decision and the decision regarding the conditional uses that would be allowed on the land were determined in a single proceeding. *Id.*

In the case at bar, the City Council approved the re-zoning, and as a part of that same legislative function, made an administrative determination that the site plan submitted by ALC would comply with the permitted uses and required restrictions for that zoning. Nothing in the zoning ordinance required the submission or issuance of a conditional use permit. We hold that nothing in the *Chrismon* decision, or any subsequent authority, required that the City employ a two-step quasi-judicial process in determining whether to re-zone the subject property and adopt ALC's site plan. The trial court's reliance on *Decker v. Coleman*, 6 N.C. App. 102, 169 S.E.2d 487 (1969) is inapposite in that it applies only to general use district zoning and was decided prior to *Chrismon*.

Moreover, we reject the trial court's assertion that absence of the quasi-judicial process would amount to a re-zoning decision being based upon the proposed use of the property, thereby constituting "contract" zoning that was held to be illegal in *Allred v. City of Raleigh*, 277 N.C. 530, 178 S.E.2d 432 (1971). *Chrismon* defines illegal contract zoning as "a transaction wherein both the landowner who is seeking a certain zoning action and the zoning authority itself undertake reciprocal obligations in the context of a bilateral contract." *Chrismon* at 635, 370 S.E.2d at 593.

The *Chrismon* court rejected the underlying decision of this Court which held that the re-zoning decision at issue constituted illegal "contract" zoning because it was done on the assurance that the applicant would submit an application specifying that he would use the property only in a particular manner. *Id.* at 634, 370 S.E.2d at 593 (quoting *Chrismon v. Guilford County*, 85 N.C. App. 211, 219, 354 S.E.2d 309, 314 (1987)). In holding that the re-zoning decision was valid conditional use zoning, the Supreme Court stated:

> In the view of this Court, the Court of Appeals, in its approach to the question of whether the rezoning at issue in this case constituted illegal contract zoning, improperly considered as equals two very different concepts—namely, valid conditional use zon-

ing and illegal contract zoning. . . . In our view, therefore, the principal differences between valid conditional use zoning and illegal contract zoning are related and are essentially two in number. First, valid conditional use zoning features merely a unilateral promise from the landowner to the local zoning authority as to the landowner's intended use of the land in question, while illegal contract zoning anticipates a bilateral contract in which the landowner and the zoning authority make reciprocal promises. Second, in the context of conditional use zoning, the local zoning authority maintains its independent decision-making authority, while in the contract zoning scenario, it abandons that authority by binding itself contractually with the landowner seeking a zoning amendment.

*Id.* at 634-36, 370 S.E.2d at 593-94.

In applying this standard to the re-zoning decision before it, the Supreme Court determined that the record failed to show evidence that the zoning authority entered into a bilateral contract with the re-zoning applicant. *Id.* at 636, 370 S.E.2d at 594. Rather, the only evidence of a promise was the unilateral promise from the applicant to the authority in the form of his proposed conditional uses. *Id.* at 637, 370 S.E.2d at 594.

The Supreme Court further concluded that the zoning authority did not abandon its role as an independent decision-maker. In rejecting the holding of this Court that the decision was not a " 'valid exercise of the county's legislative discretion,' " the Supreme Court found that "all procedural requirements [of the ordinance] were observed" and the decision was rendered only after "thorough consideration of the merits." *Id.* at 638-39, 370 S.E.2d at 594-95.

In the present case, we reject the trial court's conclusion that absence of the quasi-judicial element renders the re-zoning decision and concurrent approval of the site plan illegal contract zoning. Applying the standard set forth in *Chrismon*, we conclude that the City acted lawfully. The record does not reveal that the City engaged in any bilateral contract with ALC. Rather, as in *Chrismon*, the only evidence of a promise is the unilateral promise of ALC to abide by the conditions and restrictions as set forth in its site plan. Nor does the record show that the City abandoned its independent decision-making process. The record shows that the City followed the procedural requirements set forth in its ordinance, and that it approved ALC's

application after ample consideration of the merits, and after hearing opposing viewpoints.

We do not interpret *Chrismon* as requiring that the City must employ a two-step legislative/quasi-judicial proceeding in order to engage in conditional use zoning. We further hold that the City did not engage in illegal contract zoning by virtue of the absence of such a proceeding.

## IV. Zoning Enabling Statutes

We next determine whether the City's act of legislative re-zoning was in violation of the general zoning enabling statute. G.S. § 160A-4 applies to the interpretation of the zoning enabling statute:

> It is the policy of the General Assembly that the cities of this State should have adequate authority to execute the powers, duties, privileges, and immunities conferred upon them by law. To this end, the provisions of this Chapter and of city charters shall be broadly construed and grants of power shall be construed to include any additional and supplementary powers that are reasonably necessary or expedient to carry them into execution and effect: Provided, that the exercise of such additional or supplementary powers shall not be contrary to State or federal law or to the public policy of this State.

N.C. Gen. Stat. § 160A-4 (emphasis supplied).

G.S. § 160A-381 is the enabling statute which grants a city the legislative power to regulate the uses of property. *Hall v. City of Durham*, 323 N.C. 293, 305, 372 S.E.2d 564, 572, *reh'g denied*, 323 N.C. 629, 374 S.E.2d 586 (1988). It provides:

> (a) For the purpose of promoting health, safety, morals, or the general welfare of the community, any city may regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lots that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes and to provide density credits or severable development rights for dedicated rights-of-way pursuant to G.S. 136-66.10 or G.S. 136-66.11. These regulations may provide that a board of adjustment may determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific

rules therein contained. The regulations <u>may also provide</u> that the board of adjustment or the city council <u>may issue</u> special use permits or conditional use permits in the classes of cases or situations and in accordance with the principles, conditions, safeguards, and procedures specified therein and may impose reasonable and appropriate conditions and safeguards upon these permits.

N.C. Gen. Stat. § 160A-381(a) (emphasis supplied).

The plain language of this statute does not require that local ordinances provide for the issuance of conditional use permits. The statute clearly states that a city *may* provide for the issuance of such permits, but it clearly does not mandate such a procedure. Interpreting this statute "broadly," with all grants of power "construed to include any additional and supplementary powers," G.S. § 160A-4, we hold that the City's act of legislative re-zoning was not outside the bounds of authority granted it through G.S. § 160A-381.

The trial court further concluded that "[t]o attempt to eliminate the quasi-judicial aspect of conditional use district zoning runs afoul of the grant of authority contained in N.C.G.S. § 160A-382." We decline to read this statute so narrowly. G.S. § 160A-382 provides a city with the legislative authority to divide its territorial jurisdiction into various zoning districts:

For any or all these purposes, the city may divide its territorial jurisdiction into districts of any number, shape, and area that may be deemed best suited to carry out the purposes of this Part; <u>and within those districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures, or land</u>. Such districts may include, but shall not be limited to, general use districts, in which a variety of uses are permissible in accordance with general standards; overlay districts, in which additional requirements are imposed on certain properties within one or more underlying general or special use districts; and special use districts or conditional use districts, in which uses are permitted only upon the issuance of a special use permit or a conditional use permit.

N.C. Gen. Stat. § 160A-382 (emphasis supplied).

This statute confers upon local authorities the right to establish and develop zoning districts. The statute clearly provides local

authorities with the right to "regulate and restrict" the "use" of the land in those districts. The City has the authority under this statute to develop a zoning district such as the one at issue here, and to regulate and restrict the uses permitted within that district. We do not interpret this statute as imposing any requirement of a quasi-judicial permitting process as a prerequisite to the exercise of the discretion granted under the statute. The language of the statute is also clear that the types of zoning districts allowed may include "but shall not be limited to" the four types of districts listed.

Having held that the City acted within the power granted it by these enabling statutes, we reverse the decision of the trial court invalidating the City's re-zoning decision and hold that the decision was a valid exercise of the City's legislative authority. A legislative decision is not reviewable upon a writ of *certiorari*. *Gossett v. City of Wilmington Through City Council*, 124 N.C. App. 777, 778, 478 S.E.2d 648, 649 (1996) (quoting *In re Markham*, 259 N.C. 566, 569, 131 S.E.2d 329, 332, *cert. denied*, 375 U.S. 931, 11 L. Ed. 2d 263 (1963)) (" 'the writ of certiorari will lie to review only those acts which are judicial or quasi judicial in their nature' and 'does not lie to review or annul any judgment or proceeding which is legislative, executive, or ministerial rather than judicial.' ").

The trial court's review of this case was limited to petitioner's petition for writ of *certiorari*. We therefore do not address the merits of petitioner's action for declaratory judgment, any mention of which is absent from the trial court's order. This case is therefore reversed and remanded to the trial court for entry of an order dismissing petitioners' petition. In light of this holding, we need not address respondents' additional argument that petitioners lacked standing to bring their petition for writ of *certiorari*.

Reversed and remanded for entry of an order of dismissal.

Chief Judge EAGLES and Judge McGEE concur.